ROBERT GRAHAM, Defendant in Error, *vs.* CHARLES E. HAGMANN, Plaintiff in Error.

*Opinion filed October 27, 1915—Rehearing denied Dec. 9, 1915.*

1. APPEALS AND ERRORS—*Supreme Court cannot review facts in suit at law.* Where the Appellate Court has affirmed the judgment of the trial court approving the verdict of the jury in a suit at law, the Supreme Court will examine the record only to ascertain if the law has been properly applied by those courts to the facts before them.

. 2. NEGLIGENCE—*driver of a horse-drawn vehicle need not keep continuous lookout for automobiles.* A driver of a horse-drawn vehicle must use ordinary care in watching for automobiles and other vehicles, but he is not required to keep a continuous lookout for automobiles, under penalty that if he fails to do so and is injured contributory negligence will be conclusively imputed to him.

3. SAME—*degree of care depends upon character of the vehicle used.* The degree of care and caution to be exercised by the drivers of vehicles depends upon the character of the vehicle used, and the more dangerous the vehicle and the greater its liability to do injury to others the higher is the degree of care and caution to be exercised by the person charged with the duty of its operation.

4. SAME—*the duties of drivers of horse-drawn vehicles and of drivers of automobiles are reciprocal.* The duty resting upon the driver of a horse-drawn vehicle to be watchful for the approach of automobiles to avoid injury from them, and the duty resting upon the driver of an automobile to be watchful for travelers in other vehicles in order to prevent injuring them, are reciprocal.

5. SAME—*cases involving the conduct of one crossing railroad track do not apply to crossing of public streets.* Cases involving the conduct of a person about to cross a railroad track do not ap-

ply to the crossing of public streets, where all persons entering thereon have a right to assume that all others about to use the same will exercise due care and caution to prevent injury to them.

6. SAME—*when the violation of an ordinance is not necessarily contributory negligence.* That the injured person was riding in a wagon having no side lights, as required by a city ordinance, does not necessarily charge him with contributory negligence in case the wagon is struck by an automobile, unless the absence of such lights in some way proximately contributed to the accident.

7. PRACTICE—*when rules of the lower court are involved they should be contained in the record.* Where an instruction is refused for the reason that it was not tendered within the time required by the rules of the trial court these rules should be contained in the record, since the bill of exceptions is the pleading of the party furnishing it and is to be taken most strongly against such party.

8. SAME—*when new trial will not be granted on new evidence.* It is the duty of a party to use due diligence to procure all of his evidence at the time of the trial, and unless it appears that he has used such diligence and been unable to procure the evidence a new trial will not be granted for newly discovered evidence.

9. SAME—*character of new evidence necessary to authorize a new trial.* To authorize the granting of a new trial upon newly discovered evidence the new facts must be of a conclusive character, material to the issue and relate to the merits of the case, must have been discovered since the trial, and it must be shown that it could not have been discovered before by reasonable inquiry and due diligence.

10. SAME—*what new evidence is not sufficient to grant a new trial.* To authorize the granting of a new trial for newly discovered evidence the new evidence must not be such as merely tends to impeach a witness or is merely cumulative to the evidence already offered or tends merely to mitigate the damages, unless it is practically conclusive that only nominal or slight damages should have been allowed where heavy damages have been recovered.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. DEAN FRANKLIN, Judge, presiding.

FELIX J. STREYCKMANS, WILLIAM J. AMMEN, and AL-BERT B. JOYNER, for plaintiff in error.

EDWARD MAHER, and JAMES L. BYNUM, for defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Defendant in error, Robert Graham, brought suit in the circuit court of Cook county against the plaintiff in error, Charles E. Hagmann, for personal injuries received as the result of a collision between the wagon in which he was riding and the automobile of plaintiff in error. The accident occurred about eleven o'clock on the night of June 24, 1911, at the intersection of Jackson boulevard and Homan avenue, in the city of Chicago. The negligence charged in the declaration is the driving of the automobile at a dangerous and high rate of speed, contrary to the provisions of the statute, and in failing to sound a whistle or horn so as to give defendant in error warning of the approach of the automobile. A plea of general issue was filed and the cause tried before a jury, resulting in a verdict and judgment in favor of the defendant in error for $2000. On appeal to the Appellate Court for the First District the judgment of the trial court was affirmed. A writ of *certiorari* was allowed, and the cause is now in this court pursuant to the mandate of such writ.

The grounds urged for reversal of the judgment are, that defendant in error was guilty of contributory negligence, the refusal to give certain instructions offered by plaintiff in error, and the refusal to grant plaintiff in error a new trial on account of newly discovered evidence.

It appears that on Saturday afternoon, June 24, 1911, defendant in error and his son, George Graham, were visiting at the house of a friend, Charles W. Heise, where they met Harry Knightly, Harry Williams and Edward Hickey. They all remained at the home of Heise during the afternoon and evening and until about 10:30 o'clock that night, when they started for home in an open furniture delivery wagon owned by Knightly. Hickey was driv-

ing, with Knightly and Williams sitting with him on the driver's seat. Defendant in error and his son, George, were sitting on a bale of hay in the bottom of the wagon. The parties proceeded on their way home driving north until they reached the intersection of Homan avenue and Jackson boulevard, where the accident occurred in which defendant in error was injured. Homan avenue runs north and south and Jackson boulevard east and west through the city. The accident occurred at the northeast corner of the intersection of these two streets. Another street, Colorado avenue, runs diagonally northeast and southwest across these streets, intersecting Jackson boulevard at a point about one hundred and fifty feet east of Homan avenue, leaving a triangular open space, bounded on the north by Jackson boulevard, on the west by Homan avenue and on the southeast by Colorado avenue, which space is spoken of as the park. Hickey and the others started to cross Jackson boulevard, looked to the west but not to the east, and did not see or hear the automobile until immediately before the accident happened. The driver, and those on the seat with him, watched the automobile approaching as they proceeded across Jackson boulevard, and when they saw it had crossed Colorado avenue the driver whipped up the horse but did not succeed in getting across the street before the collision occurred. The evidence on the part of the defendant in error tended to show that the automobile was being driven at a reckless and high rate of speed; that no warning was given of its approach, and that the wagon was run into by the automobile and upset while the occupants were using all due care and were endeavoring to get out of its way. The evidence on the part of the plaintiff in error tended to show that the occupants of the wagon were more or less under the influence of liquor; that the automobile was not being driven at a high rate of speed or in a reckless manner, and that it was brought to a complete stop before the accident occurred,

which resulted from the wagon running into the automobile
and the hind wheel of the wagon catching on the fender
and bumper of the automobile and upsetting the wagon.
As a result of the collision the wagon was completely
overturned and its occupants thrown out, Williams being
thrown under the horse and defendant in error falling on
his face on the pavement, quite seriously, if not perma-
nently, injuring him. Three spokes in the right hind wheel
of the wagon were broken out and the rear axle was
broken, and the automobile was so badly damaged that it
could not be operated until it had been taken to a garage
and repairs made.

With this conflict in the evidence, the questions as to
the manner in which the accident occurred, of the plain-
tiff in error's negligence and the defendant in error's free-
dom from contributory negligence were all questions of fact
for the jury, (*Winn* v. *Cleveland, Cincinnati, Chicago and
St. Louis Railway Co.* 239 Ill. 132,) and where the ques-
tions have been submitted to them on conflicting evidence
and their verdict has been approved by the trial and Ap-
pellate Courts, this court can only examine the record to
ascertain if the law has been properly applied by those
courts to the facts before them. *Reiter* v. *Standard Scale
Co.* 237 Ill. 374.

Plaintiff in error contends defendant in error was guilty
of contributory negligence in two respects: First, in sit-
ting with his back to the driver and in not looking in
every direction before attempting to cross Jackson boule-
vard; and second, in riding in a wagon without a light
affixed to its left side showing a white light visible at least
two hundred feet in the direction toward which the wagon
was traveling, and a red light visible at least two hundred
feet in the reverse direction, as required by an ordinance
of the city of Chicago introduced in evidence.

Plaintiff in error's first contention is based upon a mis-
apprehension of the law on this subject. There is no im-

perative duty resting upon pedestrians or upon travelers in a horse-drawn vehicle on public highways to keep a continuous lookout for automobiles, under penalty that if they fail to do so and are injured, contributory negligence will be conclusively imputed to them. (*Millsaps* v. *Brogdon,* 97 Ark. 469.) The mere fact that automobiles are run by motor power and may be operated at a dangerous and high rate of speed gives them no superior rights on the highway over other vehicles, any more so than would the fact that one is driving a race-horse give such driver superior rights on the highway over his less fortunate neighbor who is pursuing his journey behind a slower horse. Highways are established and maintained at public expense for the mutual benefit of all, and all persons have a right to use them, subject only to the duty which the law imposes upon them that they shall at all times exercise ordinary care and caution for their own safety and also for the safety of all others who are traveling thereon in the exercise of their lawful rights. (*Baker* v. *Close,* 204 N. Y. 92; *Christy* v. *Elliott,* 216 Ill. 31.) The degree of care and caution to be used in each case depends upon the character of the vehicle used and the locality and surroundings in which it is being used. The more dangerous the character of the vehicle and the greater its liability to do injury to others, the higher is the degree of care and caution to be exercised by the person charged with the duty of its operation. (*Christy* v. *Elliott, supra; Simeone* v. *Lindsay,* 6 Penn. 224; *Minor* v. *Stevens,* 65 Wash. 423.) The duty resting upon the driver of an ordinary horse-drawn vehicle to be watchful for the approach of automobiles to prevent injury from them is no greater than the duty resting upon the driver of automobiles to be watchful for travelers in other vehicles in order to prevent injuring them. The rights and duties of each in the premises are reciprocal. (*Christy* v. *Elliott, supra; Hennessey* v. *Taylor,* 189 Mass. 583; *Towle* v. *Morse,* 103 Me. 250; *Fletcher* v.

270 — 17

*Dixon,* 107 Md. 420; *Burvant* v. *Wolfe,* 126 La. 787.) Cases involving the conduct of a person about to cross a railroad track at a grade crossing are not in point. (*Hennessey* v. *Taylor, supra; Eaton* v. *Cripps,* 94 Iowa, 176; *Diamond* v. *Cowles,* 98 C. C. A. 417; *Tiffany & Co.* v. *Drummond,* 93 id. 469.) Railroads are engaged in the performance of a business of a *quasi* public nature, and in carrying out the purposes for which they are created must necessarily often operate their trains at such a high rate of speed that they cannot be brought to a sudden stop without endangering the lives and safety of those riding therein. They travel on fixed tracks and cannot turn aside, and the danger to be encountered in entering thereon is so well known and is a matter of such common knowledge, that when a traveler on a public highway fails to use the ordinary precautions before driving thereon, the general knowledge and experience of mankind condemn such conduct as negligence. But a public street crossing is not ordinarily a dangerous place, and all persons entering thereon have a right to assume that all others about to use the same will exercise due care and caution to prevent injury to them. *Hennessey* v. *Taylor, supra.*

Plaintiff in error's second contention is based upon the provisions of an ordinance of the city of Chicago introduced in evidence, which provided that from an hour and a half after sunset until an hour before sunrise the user of a horse-driven vehicle on the streets of the city shall have a light affixed to the left side of the vehicle which is visible and will show a white light for at least two hundred feet in the direction toward which the vehicle is traveling, and a red light visible for at least an equal distance in the reverse direction. There was a conflict in the evidence as to whether or not such a light was affixed to the wagon in which defendant in error was riding. Testimony on the part of plaintiff in error tended to show that no such light was on the wagon, and there was testimony on

behalf of defendant in error that there was a lighted· lantern affixed to the left side of the wagon which would throw such a light by reason of the manner in which the globe had been painted.

At the conclusion of the trial, and before the commencement of the last argument on behalf of defendant in error, plaintiff in error tendered an instruction embodying the above section of the ordinance, by which the jury were told that if they believed, from the evidence, that the defendant in error knew, or by the exercise of ordinary care could have known, that the wagon in which he was riding was being operated in violation of such ordinance, he was guilty of contributory negligence as a matter of law. The court refused to give this instruction, and such refusal is assigned as error. It appears from the record that this instruction was refused for the reason, among others, that it was not tendered within the time required by the rules of court for presenting instructions. The rules of the circuit court of Cook county bearing upon this question are not contained in the record and this court has no means of ascertaining the provisions of such rules. A bill of exceptions is the pleading of the party furnishing it and is to be taken most strongly against such party, (*Martin* v. *Chicago and Milwaukee Electric Railroad Co.* 220 Ill. 97,) and should include all matters of fact that were presented to the court with respect to the matter before it for decision. But, independent of the question as to whether or not it was tendered in time, we think· the instruction was properly refused for the reason that it told the jury the defendant in error was guilty of contributory negligence if he knew, or by the exercise of ordinary care might have discovered, that the vehicle in which he was riding was being operated in violation of such ordinance, entirely omitting the further element that such violation of the ordinance in some way proximately contributed to the accident. The mere fact that defendant in error was rid-

ing in the vehicle without such a light did not render him
guilty of such contributory negligence as would bar his
cause of action, unless the omission of such light in some
way proximately contributed to the accident in which he
was injured. That such was not the case here is conclu-
sively established by the plaintiff in error's own evidence,
which was that he saw the wagon in such time as to en-
able him to bring his automobile to a complete stop before
the accident occurred, which was caused, as he claimed, by
the wagon running into his automobile and not the auto-
mobile into the wagon. Under these circumstances it can
not be said that the omission to have the light upon the
wagon in any way contributed to the accident. In the ab-
sence of evidence tending to show such fact the instruction
was erroneous and was properly refused. *Chicago, Rock
Island and Pacific Railroad Co.* v. *Bell,* 70 Ill. 102.

It is further insisted that the court should have granted
a new trial on account of newly discovered evidence which
plaintiff in error claims he was unable to produce at the
trial. The evidence claimed to have been discovered was
that of two policemen who were at the scene of the acci-
dent shortly after it occurred, and who stated in their af-
fidavits that they arrived at the place within two minutes
after the accident occurred; that Hagmann and all the
occupants of the wagon were there; that they helped up-
right the horse and wagon, and that Graham and his com-
panions got in and drove away and that they saw and heard
no evidence or indication of anyone being hurt or injured
and that defendant in error was not unconscious at any
time while they were there; also an affidavit by an inves-
tigator for the firm of attorneys representing plaintiff in
error, that he had made an examination of certain books
of the firm of Sears, Roebuck & Co., by whom defendant
in error was employed, and ascertained that defendant in
error was absent from his employment only from June 26
to June 30, inclusive, July 1 and October 15, 1911, and on

certain other days in the year 1912. This latter evidence,
had it been produced at the trial, would have tended to
contradict defendant in error's evidence as to the number
of days he was absent from his work on account of his
injuries. The only excuse offered for not producing this
evidence on the trial was, that the investigator for plain-
tiff in error was unable to learn where defendant in error
was employed, nor any information as to who the police-
men were that were at the place of the accident because
no report of the same was made to the police department.
No other diligence is shown to have been used to obtain
this evidence at the trial, and no facts are stated showing
that any effort was made to ascertain where defendant in
error was employed, or who the policemen were who were
on duty at the place at the time the accident occurred, ex-
cept the making of inquiry one time at the police depart-
ment for a report of the accident. It is the duty of a
party to use due diligence to procure all of his evidence
at the time of the trial, and unless it appears that he has
used such diligence and been unable to procure the evidence,
a new trial will not be granted on those grounds. (*Prons-
kevitch* v. *Chicago and Alton Railway Co.* 232 Ill. 136;
*Kimber* v. *Burns,* 253 id. 343; *Springer* v. *Schultz,* 205 id.
146.) It must be of a conclusive character, material to
the issue and relate to the merits of the case. (*Crozier* v.
*Cooper,* 14 Ill. 139; *People* v. *McCullough,* 210 id. 488;
*People* v. *Williams,* 242 id. 197.) It is not sufficient that
it tends to impeach a witness, (*Chicago and Eastern Illinois
Railroad Co.* v. *Stewart,* 203 Ill. 223,) or is merely cumu-
lative to the evidence already offered, (*People* v. *Williams,
supra,*) or such as merely tends to mitigate the damages,
unless it is practically conclusive that only nominal or slight
damages should have been allowed where heavy damages
have been recovered. (*Schlencker* v. *Risley,* 3 Scam. 483;
*Manix* v. *Malony,* 7 Iowa, 81.) The evidence must have
been discovered since the trial, and where it consists of

the evidence of other persons who were present at the time the accident or controversy occurred, it must be shown that such facts could not have been ascertained by reasonable inquiry and the exercise of due diligence. In this case no reason is shown why plaintiff in error could not have ascertained from the police department the names of the policemen on that beat that night long before the trial, or why the records of Sears, Roebuck & Co. could not have been procured at the trial after defendant in error had testified to his employment there, and the fact that all of these matters were discovered but a few days after the trial tends very strongly to show that had the plaintiff in error made proper inquiry and exercised due diligence in this respect substantially all of this evidence could have been produced at the time. "It cannot be the practice of courts to allow important matters to go to trial, and because one party is not satisfied with the results of it let him go out and try to get facts which will enable him to do better at another trial, and rely upon such after-ascertained matters as a basis for a new trial. In such case the courts require that the newly discovered evidence shall be material and shall not be cumulative, and that due diligence has been exercised to procure it." (*Chicago and Alton Railroad Co.* v. *Raidy,* 203 Ill. 310.) Under the circumstances we think the affidavits in this case fail to show that due diligence was used to produce such evidence at the time of the trial. The court did not err in refusing to grant a new trial on that ground.

Finding no reversible error in the record the judgment will be affirmed.

*Judgment affirmed.*