WILLIAM T. PRIDMORE, JR., Defendant in Error, *vs.* THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed October 24, 1916—Rehearing denied Dec. 6, 1916.*

1. APPEALS AND ERRORS—*effect of Appellate Court's affirmance of judgment in suit at law.* Affirmance by the Appellate Court of a judgment in a suit at law precludes the Supreme Court from an examination of the record except to ascertain whether the law has been properly applied by the lower courts to the facts before them and to determine whether or not the judgment ought to be reversed by reason of error in the record.

2. NEGLIGENCE—*when jury is warranted in finding the deceased was in the exercise of due care.* If the facts and circumstances tend to show that the deceased was exercising due care up to within a second or two of the time he was struck by a train, so that no act upon his part could reasonably be expected to change the situation, the jury is warranted in finding he was exercising due care at the time of injury, though no one saw the train strike him.

3. SAME—*when giving erroneous instruction will not reverse.* Giving an instruction in a personal injury case which is erroneous in invading the province of the jury in determining the question of due care by the deceased is not ground for reversal, where there are numerous instructions correctly informing the jury on that question and where it is clear from the evidence in the record that the verdict does substantial justice.

4. RAILROADS—*crossing flagman entitled to protection of ordinances regulating train movements.* Railroad employees working in private railroad yards or grounds or on railroad tracks within

the city limits are entitled to the protection of the ordinances of the city regulating the speed and movement of trains; and this includes a crossing flagman, whose duty it is to be on the lookout for trains.

WRIT OF ERROR to the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

M. L. BELL, and A. B. ENOCH, for plaintiff in error.

FRANK P. SADLER, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On July 11, 1910, about 11:50 P. M., plaintiff in error, at Rock Island Junction, obtained permission of the Pennsylvania Company to deliver over its tracks to Roby, Indiana, a distance of a little more than two miles, two cars of grain, which delivery it attempted to make by twelve o'clock that night to save demurrage charges on the two cars. The train of plaintiff in error consisted of a locomotive (No. 113) and said two cars, and was operated to Roby through a part of South Chicago on the south or east-bound track and back to Rock Island Junction on the north or west-bound track of the Pennsylvania Company, which tracks crossed the streets at grade. After crossing the Calumet river, a short distance from Rock Island Junction, the tracks of the Pennsylvania Company run in a southeasterly direction, and intersect, in the order named, avenue N, avenue M, avenue L and Ewing avenue, all of which run north and south. The Pennsylvania Company had employed as a crossing flagman Erik Rinnman, stationed at avenue L crossing, and defendant in error's intestate, William T. Pridmore, Sr., as crossing flagman at Ewing avenue crossing near its intersection with One Hundredth street, the shanty occupied by the deceased while

acting as such flagman being located just east of Ewing
avenue and south of said railroad tracks. The tracks of
the Pennsylvania Company between Rock Island Junction
and Roby were also used by the Ft. Wayne and Chicago
Railway Company and by the Pere Marquette Railroad
Company. Defendant in error began this suit in the supe-
rior court of Cook county against all of said railroad com-
panies except the Pere Marquette, to recover damages for
the alleged wrongful death of defendant in error's intestate.
The declaration of four counts charged (1) general negli-
gence by plaintiff in error in the management and operation
of said locomotive and cars belonging to it; (2) negligence
by it in failing to sound a whistle or ring a bell when ap-
proaching a highway crossing, as required by the statute;
(3) the violation by plaintiff in error of section 1978 of
the municipal code of Chicago, limiting the speed of trains
to ten miles an hour; (4) the violation by it of section 1981
of said code, requiring every locomotive, car or train of
cars running at night on any railroad track in said city to
have, and keep while so running, a brilliant and conspicu-
ous light on the forward end of such locomotive, car or
train of cars. The suit was dismissed as to all the defend-
ants except plaintiff in error. A trial by a jury resulted
in a verdict and judgment against plaintiff in error for
$4500, and that judgment was affirmed by the Appellate
Court for the First District. The record is brought to this
court by *certiorari* to be reviewed on errors assigned.

It is first argued by plaintiff in error that the court erred
in overruling its motion, at the close of the evidence, to
exclude the evidence from the consideration of the jury
and to instruct the jury to find it not guilty. The Appel-
late Court in affirming the judgment of the trial court and
approving the verdict of the jury in this case has precluded
us from an examination of the record except to ascertain
if the law has been properly applied by those courts to the
facts before them and to determine whether or not the

judgment ought to be reversed by reason of prejudicial error in the record. *Graham* v. *Hagmann*, 270 Ill. 252; *Reiter* v. *Standard Scale Co.* 237 id. 374.

No one saw the deceased at the very moment he was killed, but it was shown by the testimony of two witnesses that he must have been struck by the train of plaintiff in error on or near the south-bound track, at Ewing avenue. Rinnman testified, in substance, that about midnight on said night he was standing about three or four feet south of the tracks, between his shanty and said tracks, looking toward the crossing at Ewing avenue and saw a freight train, west-bound, approaching that crossing; that he saw a lantern moving in a northerly direction from the deceased's shanty and stop at the center of said crossing at a point north of the west-bound track; that after said freight train had cleared said crossing he saw the lantern moving back across the crossing toward the shanty; that about the time said west-bound train cleared his crossing at avenue L, and while he was facing northwest, the locomotive and two cars passed him on the east-bound track at a speed of fifty miles an hour and almost blew him over and which he did not see until they were almost to him; that when that engine and cars were just about down to Ewing avenue crossing his view of the deceased and his lantern was thereby obstructed and he did not again see the lantern at Ewing avenue crossing; that after the locomotive and two cars passed east two regularly scheduled trains also passed east, and failing to then see any lantern at Ewing avenue crossing he knew something had happened and went to that crossing to make an inspection, and that he saw the dead body of Pridmore about one hundred and fifty or two hundred feet east of the crossing, between the two rails of the south track. Charles Swanstrom was a towerman for the Lake Shore and Michigan Southern Railway Company, whose tracks parallel the railroad tracks in question about fifty feet further north. He testified that he was in his tower,

about fifty feet north of the deceased's shanty, that night and saw Pridmore go from his shanty with his lantern and flag the freight train going west while standing north of the tracks, near the center of Ewing avenue; that after that train passed he saw Pridmore start back with his lantern toward his shanty, and that when he was about midway between the east and west-bound tracks, walking toward his shanty, witness moved his eyes from him and saw the locomotive and two cars about one hundred feet northwest of Pridmore, running toward him at a speed of about fifty miles an hour; that there were no obstructions between him and Pridmore or between him and the train, and that he was about forty feet from Pridmore when he last saw him and never saw him or his lantern after the engine and two cars had passed, although looking and "listening for him hard," and that after the two next regular trains passed east without his being able to see Pridmore he got out of his tower to look for him. The evidence further shows that the body was badly mangled, and that his hat was found about one hundred feet northwest of his body and his lantern was picked up in fragments along the south-bound track, between the body and the crossing. It further shows, without contradiction, that it was raining when the plaintiff in error's train left Rock Island Junction for Roby, that the night was dark and that the streets in the immediate vicinity of the Ewing avenue crossing were but dimly lighted.

The evidence further shows that plaintiff in error's servants violated the ordinances named in counts 3 and 4 of the declaration and were running at a speed of from thirty-five to fifty miles an hour at the time they were approaching and crossing Ewing avenue from the west; that the headlight upon said locomotive was not then lighted and no bell was then rung and no whistle sounded. The crew of five men that ran plaintiff in error's train all testified, and not one of them testified that the headlight was burn-

ing that night when they crossed Ewing avenue going east. They did testify that they thought it was burning when they started from Rock Island Junction but were not positive as to that, and the engineer, O'Leary, testified positively that it was not burning when they arrived at Roby and that he did not know whether it was burning at Ewing avenue. They testified that the speed of their train that night was twenty-five or thirty miles an hour and that they were running at their highest rate of speed as they passed Ewing avenue going east, and their evidence shows that they never whistled for that crossing, although they testified that the engine had an automatic bell-ringer and that the bell was rung all the way to Roby. The engineer and one other of the crew also testified that they did not see the flagman at Ewing avenue crossing. Proof was made as to just what the deceased was doing up to within two seconds or less of the time that he was struck by plaintiff in error's train, and the last time he was seen alive he was walking almost southeasterly toward his shanty with his lantern, with that train within one hundred feet of him, going at the terrific speed of not less than forty-five miles an hour, or sixty-six feet per second. The telegraph operators on the Pennsylvania Company's road are required to take the exact time that all trains reach their stations and are required to set their clocks at 11 A. M. and 11 P. M. daily by the Western Union time, which they get at those hours. By the testimony of the operators at River Branch Junction and Colehour, or One Hundred and Third street, plaintiff in error's train passed the former station, going east, at 11:58 P. M. and the latter at 11:59 P. M. The distance is eight-tenths of a mile, and that distance is shown to have been traveled at the rate of forty-eight miles an hour, or seventy and two-fifths feet per second. Ewing avenue is between those two stations. Rinnman and Swanstrom's evidence shows with reasonable certainty that when Rinnman last saw the deceased he was within seventy feet or

less of the train as it approached him, and very near, if
not on, the south or east-bound track, and the circumstances
corroborate that theory.   The train was proved to be then
running at its highest rate of speed, and no matter what
Pridmore did or attempted to do after he was last seen
and until he was struck by the train, it was hardly possible
for him at that late moment to have saved himself from
that train.  Proof was made, and not contradicted, that
he was industrious, sober, healthy, intelligent, in possession
of all his faculties, attentive and efficient in the perform-
ance of his duties as a crossing flagman, and up until the
night in question had never missed flagging a train at his
crossing.

With the foregoing facts proved by defendant in er-
ror there is no ground for the contention that the proof
does not tend to show that the deceased was killed by the
train of plaintiff in error while he was in the exercise of
reasonable care for his own safety.   The proof not only
shows that the servants of plaintiff in error were guilty of
the negligence charged in the operation of that train, but
it overwhelmingly shows that they were guilty of wanton
and reckless conduct amounting to gross negligence or will-
fulness, and it would have been reversible error in the
court to have refused to submit the case to the jury.

It is insisted that the court committed reversible error
in giving defendant in error's instructions Nos. 9, 10 and
11, which are, respectively, as follows:

9. "That in order to show ordinary care on the part of
deceased the plaintiff is not required to produce direct and
positive testimony showing just what the deceased was do-
ing at the instant he received the injury causing his death.
The law requires only the highest proof of which the par-
ticular case is susceptible, and the jury may take into con-
sideration, with other facts, the instincts and perceptions
which naturally lead men to avoid injury and preserve their
own lives.

10. "That if they find, from the evidence, no direct proof as to what the deceased was doing at the instant he received the injury causing his death, the jury are at liberty to infer ordinary care and diligence on the part of the plaintiff from all the circumstances of the case, his character and habits as shown by the evidence and the natural instincts of self-preservation.

11. "That although the burden is on the plaintiff to prove due care on the part of deceased, nevertheless it is only required of him that he should put in evidence the facts and circumstances attending the injury, and if the jury believe, from the evidence, that these show negligent conduct in the defendant, from which the injury followed as a direct and proximate consequence and do not show any contributory negligence in the deceased, Pridmore, it is sufficient, in the absence of further opposing evidence, upon which to base a finding for the plaintiff."

Instruction No. 9 is erroneous and not applicable to the case because no evidence was introduced as to the character and habits of the deceased in respect to care for his own safety.

Instruction No. 11 is subject to criticism, but we do not think plaintiff in error was seriously prejudiced by giving it. Due care and negligence are both, as a rule, proved by the facts and circumstances attending the injury, if they existed, and the facts and circumstances attending the injury were shown in this case up to within a second or two of the injury, or up to such a time that no act on the part of the deceased could be reasonably expected to change his dangerous situation, and we think the evidence clearly warranted the jury in finding that he was in the exercise of due care. The deceased had his back to the train that struck him. That train had no light on it, and under the evidence in this case gave him no warning whatever except by the noise it made, and he no doubt naturally supposed it was the noise of the train going west at that same moment.

Instruction No. 10 was erroneous because of its tendency to invade the province of the jury, but in view of the number and nature of other instructions given upon the question of due care we do not think that plaintiff in error was prejudiced by the giving of that instruction. The court gave an instruction for both parties correctly defining the degree of care required of the deceased. In five other instructions given for the defendant in error the jury were positively informed that before they could render a verdict for defendant in error they must find, from the evidence in the case, that the deceased was in the exercise of ordinary care for his safety at and before the time of his injury. In four different instructions for plaintiff in error the jury were positively informed that before the plaintiff could recover he must prove, by a preponderance or greater weight of the evidence, that the deceased, at the time of the accident, was in the exercise of due care and caution for his own safety. In addition to the foregoing the court also gave these instructions for the plaintiff in error:

"If you believe, from the evidence, that the deceased could have discovered the approaching train, by exercising ordinary care, in time to have enabled him to avoid the accident by the exercise of ordinary care on his part, and that he did not exercise such care, you will find the defendant not guilty."

"The employees of the defendant, in operating the defendant's train, had a right to assume that the deceased, Pridmore, would use ordinary care to protect himself."

In this connection it is argued by the defendant in error that the plaintiff in error was guilty of gross negligence or of wanton and reckless conduct, and that contributory negligence on the part of the deceased is no defense where such conduct is proved on the part of the plaintiff in error. That contention could be well sustained by this court but for the fact that the defendant in error failed to plead such conduct on the part of the plaintiff in error in the declara-

tion. Such contention, however, cannot be sustained under this declaration.

There is no merit in the contention that the court committed reversible error in admitting in evidence certain train registers, wherein, in their regular course of business, the telegraph operators registered the exact time of the arrival and departure of trains at their stations. The operators at the stations of River Branch Junction and Colehour testified positively that they made the entries themselves for their stations and that the train passed their stations at the time shown by their registers. The time (11:56 P. M.) that the train left Rock Island Junction was not material in the case, and the fact that it was telephoned to another operator, who entered it without verification, by the party who telephoned the time, was not prejudicial to plaintiff in error.

The defendant in error, before concluding his evidence, asked the court to call as a witness the engineer of plaintiff in error's train in question, and stated as his reason that the engineer was a hostile witness and that he did not want to vouch for him by making him his witness. The court sustained an objection of the plaintiff in error to the statement that the engineer was a hostile witness and instructed the jury to disregard it, as there was no evidence to show that he was hostile or otherwise. The court then examined the witness in regard to the movements of the train on the night in question. There was no proper showing made to the court that justified the calling and examining of the witness by the court. Plaintiff in error is not in a position to complain of the action of the court, however, because the plaintiff in error afterwards called this witness and examined him upon the same line of testimony elicited by the court and substantially the same cross-examination followed by the defendant in error.

It is also contended that the deceased, by reason of his being employed as a flagman, did not come within the class

of persons protected by the provisions of statutes and ordinances relating to the speed of trains, headlights upon locomotives and other warning signals. Employees of railroad companies working in private railroad yards or grounds within city limits or on railroad tracks are entitled to the protection of ordinances or statutes regulating the speed of trains within city limits and providing for the ringing of the bell or blowing of the whistle or the carrying of headlights on moving engines. (*East St. Louis Connecting Railway Co.* v. *Eggmann,* 170 Ill. 538; *Illinois Central Railroad Co.* v. *Gilbert,* 157 id. 354.) We perceive no reason for holding that Pridmore was not entitled to the same protection although he was a flagman, whose duty it was to keep a lookout for and flag trains. He was not an employee of plaintiff in error, and he was entitled to the same precautions required by the statute and the ordinances as other employees along that line to enable him to properly discharge his duty and to protect himself in the discharge of that duty.

There are other errors assigned on the record, but it is so apparent that they are without merit that we pass them without further discussion. Substantial justice has been done in this case, and it is obvious that no decision more favorable to plaintiff in error would result from another trial. Therefore the judgment should not be reversed although error has intervened in the giving of said instructions. *Beseler* v. *Stephani,* 71 Ill. 400; *City of Chicago* v. *Jackson,* 196 id. 496; *Odin Coal Co.* v. *Tadlock,* 216 id. 624.

The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*