## Emma J. Purinton, Administratrix, Appellee, v. Belt Railway Company of Chicago, Appellant.

### Gen. No. 21,905.

1. RAILROADS, § 465*—*applicability of ordinance requiring lights at night on head of moving train to yard employees.* An ordinance of the City of Chicago requiring that moving trains on any track in the city, in the nighttime, should keep and have a brilliant and conspicuous light on the end thereof in the direction towards which the train is moving, *held* applicable to railroad yards in favor of employees as well as of the public.

2. APPEAL AND ERROR, § 1236*—*when defendant cannot complain of alleged erroneous introduction of evidence.* Where the defendant objected to certain portions of a written instrument introduced in evidence as incompetent, and for the purpose of preserving his point read such portions into the record in the presence of the jury and introduced evidence based expressly upon such instrument, and the plaintiff offered thereupon to strike out the portions objected to before reading the instrument in evidence, and the jury were instructed to disregard such portions, *held* that the defendant would not be in position to thereafter complain of such portions of the instrument.

3. MASTER AND SERVANT, § 448*—*when railroad switchman has right to assume compliance with ordinance.* A railroad switchman is not bound to anticipate negligence on the part of the operator of a moving train as to such operator's duty to maintain lights thereon, but has a right to assume that the operator had complied with an ordinance requiring such lights.

4. MASTER AND SERVANT, § 760*—*when question whether violation of ordinance as proximate cause of death of switchman is for jury.* Whether a violation by the operator of a moving train of an ordinance requiring lights on such trains was the proximate cause of a switchman's death, *held* to be a question for the jury in an action to recover damages for such death.

5. MASTER AND SERVANT, § 704*—*when evidence is sufficient to sustain finding that violation of ordinance was proximate cause of death of switchman.* In an action for the death of a railroad switchman, *held* that the finding that the defendant's violation of an ordinance requiring lights on moving trains was the proximate cause of the death of plaintiff's intestate was not against the manifest weight of the evidence.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Purinton v. Belt Railway Co., 204 Ill. App. 382.

6. MASTER AND SERVANT, § 699*—*when evidence sufficient to show exercise of due care by deceased switchman.* Evidence from which due care on the part of plaintiff's intestate, a switchman, at the time he was killed by defendant's negligence in operating its train might be inferred, *held* to be sufficient to sustain a finding in favor of the plaintiff.

7. DEATH, § 67*—*when verdict is not excessive.* A verdict for $10,000, *held* not to be excessive, in an action to recover damages for death from negligence.

8. TORTS, § 31*—*when instruction in action against railroad company for death of employee is not erroneous.* An instruction in an action against one of two railroad companies to recover damages for the death of an employee that the defendant would not be entitled to the benefit of any moneys paid by the other company to the plaintiff on account of the same death in the event of a judgment for the plaintiff, *held* not erroneous in the absence of any evidence tending to show that the two companies were joint tort feasors.

9. ACCORD AND SATISFACTION, § 11*—*when instruction on effect of covenant not to sue one party is not erroneous.* Where an instrument introduced in evidence recited that it was a covenant by the plaintiff not to sue and was not an accord and satisfaction of any claims the plaintiff might have against the other party to such instrument, and there was no evidence to dispute such recital, *held* that an instruction that a covenant not to sue one party on account of a certain injury or death would not be a bar or defense to a suit brought against another and different party on account of such injury or death was proper, in an action to recover damages for a certain death against one party wherein such instrument as to another party was introduced in evidence.

10. APPEAL AND ERROR, § 1514*—*when court of review will not determine whose conduct of opposing counsel is less reprehensible.* It is not the province of a court of review to scrutinize a record with a view to determining whose conduct of opposing counsel in a case engaging in personal clashes and altercations is the less reprehensible, or who scored the greater number of points.

BARNES, P. J., dissenting.

Appeal from the Superior Court of Cook county; the Hon. RICHARD E. BURKE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1915. Affirmed. Opinion filed March 20, 1917. *Certiorari* denied by Supreme Court (making opinion final).

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

C. G. AUSTIN, JR., JAMES G. CONDON and BEVERLY W. HOWE, for appellant; C. G. AUSTIN, JR., of counsel.

JAMES C. McSHANE, for appellee.

MR. JUSTICE McDONALD delivered the opinion of the court.

Plaintiff, as administratrix, brought an action on the case for the alleged wrongful death of Claude P. Purinton, hereinafter referred to as the deceased, who was run over and instantly killed by a train of freight cars operated by defendant over the tracks of another road, on the night of February 4, 1913. The jury found the defendant guilty as charged in the declaration, assessing plaintiff's damages in the sum of $10,-000, for which amount and costs the judgment herein complained of was rendered.

The declaration, which consisted of three counts, alleged that the deceased at the time of the fatality was a switchman in the employ of the Chicago, West Pullman & Southern Railway Company; that on the night in question, the train in connection with which the deceased was employed (hereinafter designated as the West Pullman train) occupied a track owned by and in possession of the Chicago, Rock Island & Pacific Railway Company, otherwise known as the Rock Island; that as the deceased was crossing another track, and while in the exercise of due care for his own safety, he was run over by a train of freight cars which defendant was pushing by means of a locomotive, in a westerly direction along the track which the deceased was then in the act of crossing.

The gravamen of the charge is, that defendant operated its said locomotive and train of cars negligently and in violation of the city ordinance, which provided, in substance, that every locomotive, engine, car or train while running on any track in the City of Chi-

cago in the nighttime shall have and keep a brilliant and conspicuous light on the forward end thereof if moving in a forward direction, or on the rear end if backing, the said ordinance being fully set forth in the declaration.

The Rock Island tracks run east and west at a place in the City of Chicago known as Pullman Junction, the scene of the accident, the north track being used for westbound and the south track for eastbound traffic. Just south of these tracks lies a track known as the "Pullman lead," which parallels the said Rock Island tracks. About ten feet south of the said "Pullman lead" is the Rock Island switch shanty, consisting of a dismantled freight car, where the crews of freight trains usually stop to obtain information relative to the operation of their trains.

On the night in question the West Pullman train, on which the deceased was employed, occupied the north or westbound Rock Island track, the engine thereof being attached to the head or west end, but facing east. It proceeded westward to a point where the Rock Island tracks are traversed at right angles by the New York, Chicago & St. Louis Railway Company's tracks, which run north and south. This intersection was referred to by several witnesses as the Nickel Plate crossing.

When the West Pullman train approached this crossing, the north and southbound traffic had been given the right of way, and consequently the West Pullman train came to a full stop just east of the intersection, awaiting the signal to proceed.

In the meantime, the deceased, who was the "head" man of his train, alighted from the engine on which he had been riding, and walked southwest for a distance of about three hundred feet, to the Rock Island switch shanty, where he talked with one Kennedy. In order to reach this shanty, the deceased had to cross the aforesaid "Pullman lead" track.

The deceased remained in the shanty for about five minutes, during which time his train cleared the Nickel Plate crossing, and as it passed the shanty, the deceased started in the direction of the head end of his train. In order to reach it, he had to recross the "Pullman lead" track; and just as he stepped thereon, he was struck by defendant's train, consisting of some seventeen freight cars, being pushed in a westerly direction on the said "Pullman lead" track.

The evidence shows that there was a flat car about forty feet long and about four feet in height, at the west end of defendant's train, i. e., the end nearest to the deceased at the time he was struck; that next following and attached thereto was a box car which was considerably higher, neither of which carried any light whatsoever; and that defendant's train was moving along at the rate of three or four miles per hour at the time of the accident.

Defendant contends, first, that the aforesaid ordinance relating to lights on moving trains is inapplicable to employees working in railroad yards, the said ordinance being intended solely for the benefit of the public, and that the court therefore erred in admitting proof thereof. This very question was presented in *Pridmore v. Chicago, R. I. & P. Ry. Co.*, 275 Ill. 386, and decided adversely to defendant's contention here.

Defendant also urges that the court committed reversible error in admitting in evidence a certain agreement dated April 12, 1913, which purports to be a covenant not to sue, entered into by and between the West Pullman railroad and plaintiff. It contained, among others, the following provision:

"WHEREAS, the said Claude P. Purinton was killed * * * while employed by the party of the first part as a switchman *but not through the negligence or fault of the party of the first part, but through the negligence and fault of the Belt Railway Company of Chi-*

*cago;* and deceased left him surviving the said Emma J. Purinton, his widow, *and several children as his next of kin.*"

The agreement fixes a certain sum ($3,500) to be paid to plaintiff in regular instalments, and recites further that, in making such agreement, the company was actuated by a desire "to contribute to deceased's said widow *and children.*"

The objection is directed solely to the italicized portions of the foregoing clauses, and underlying it is the contention of defendant that the recital ascribing the death of the said Purinton to the negligence of defendant is self-serving and therefore clearly incompetent; and that inasmuch as the children referred to are stepchildren of the deceased, this recital should not have been admitted in evidence. And defendant argues vigorously that it was greatly prejudiced by the admission of this evidence into the record, notwithstanding the jury were afterwards instructed to disregard it.

It appears from the evidence that as part of its case defendant introduced numerous vouchers for payments made by the West Pullman railway to plaintiff, under the aforesaid agreement, each of which recited that the payment therein described was made "as per agreement of April 12, 1913," etc. The testimony of defendant's witness was to the effect that these payments were all made pursuant to the said agreement, which he also identified.

Considerable discussion by counsel preceded the introduction of the said agreement in evidence. Counsel for defendant objected to the italicized portions thereof, and for the purpose of preserving the point he read the same into the record, whereupon counsel for plaintiff offered to strike out the objectionable recitals therefrom before reading the agreement to the jury. Counsel for defendant then stated: "I have just read

it myself out loud, if the court please, to the stenographers, in the presence of the jury, so, of course, now, after I have done that, he is willing that it be stricken out.''

All of the foregoing took place in the presence and hearing of the jury. The agreement was afterwards read in evidence, subject, however, to the objection of the defendant.

In view of the fact that counsel for defendant introduced the aforesaid receipts in evidence, which expressly referred to this document, and later on read the objectionable portions in the presence of the jury, and plaintiff having offered to strike out the objectionable portions as indicated by counsel for the defendant, before reading the agreement to the jury, and the jury having been afterwards instructed to disregard the objectionable portions, we fail to see how defendant is now in a position to complain.

It is further contended by defendant that the verdict was clearly and manifestly against the weight of the evidence.

Various questions are involved in the determination of that issue.

Defendant argues that from Kennedy's testimony it is shown that the deceased was warned of the approach of defendant's train just as he was leaving the switch shanty. Whether or not the deceased heard this warning can be determined only by inference. The evidence shows that the deceased made no response to Kennedy after the latter had called to him. His train was passing the shanty a short distance away, and the defendant's train was also approaching the shanty, so it is fair to presume that the deceased was in a noisy environment when the warning was given him by Kennedy. At any rate, we believe it was a question for the jury to determine whether or not the deceased heard the warning.

Purinton v. Belt Railway Co., 204 Ill. App. 382.

The only person who saw the deceased at the precise moment of the accident was one Quiggle, who was the conductor of defendant's train which struck the deceased, and who at the time of the accident stood on the "Pullman lead" track, about eighty-five feet west of the Rock Island shanty and facing east. He testified:

"There was no light on the forward car of that train at the time this man was killed. There was no light on either the first or second car of that train. The first car was a flat car. * * * There was no man with a lantern or without a lantern riding on the forward car of the train, or on the second car of the train. * * * When he (deceased) came out of the door he crossed right over the track. He was struck either by the front end of the flat car or the draw bar, I don't know which. I couldn't see the man. The man was a mere shadow to me. All I could see was the light, but I will say he didn't lose a lot of time coming out. It is only a few feet from the shanty to the track. Right straight across the track was the direction he took. * * * It was all dark. The flat car and the west truck of the box car both passed over him. * * * Indications were he was dragged some six or seven feet. When I seen the light go up in the air, I gave the stop signal immediately. * * * At the time he came out of the shanty I couldn't see the flat car."

That defendant was negligent in failing to have a light on the flat car in question, as required by the city ordinance, was conclusively established. Therefore, even had the deceased looked, he would not have seen any light to warn him of the approaching train, for the evidence shows there was none.

The flat car at the foremost end of the approaching train was only four feet in height, but it was about forty feet long; next to it was a box car, considerably higher than the flat car to which it was attached; the night was dark. Under such circumstances, it is highly probable that a person with normal vision, coming out of a lighted room, as did the deceased, might not have

seen the flat car though he had looked, and seeing the box car silhouetted against the sky, might reasonably have been misled and supposed the box car to be the foremost one of the approaching train. Such inference finds support in the testimony of Quiggle, who testified that at the time of the fatality he saw the box car but could not see the flat car, although he was the conductor of this train and must have known the flat car was there. It must also be borne in mind that the deceased was not in duty bound to anticipate negligence on the part of the defendant, but, on the contrary, he had a right to assume that defendant had complied with the ordinance by placing a light on the flat car. *Chicago City Ry. Co. v. Fennimore,* 199 Ill. 9.

In view of all the foregoing facts and circumstances shown by the evidence, it was a question of fact for the jury to determine whether or not the violation of the ordinance was the proximate cause of the fatality. The jury by their verdict determined that question in favor of the plaintiff, and we are not prepared to say that such finding was clearly and manifestly against the weight of the evidence.

Defendant also contends that there is no proof of the exercise of due care on the part of the deceased at. and just prior to the time of the accident. There is evidence in the record from which due care may be inferred. That is sufficient. *Elgin, J. & E. Ry. Co. v. Headley,* 220 Ill. 462.

Defendant next complains that the verdict is excessive. No argument is advanced in support thereof, save that the damages were greatly enhanced by the admission of improper evidence and by the alleged misconduct of opposing counsel. However, we are unable to say from an examination of the record that such amount is excessive, although it is the maximum allowance fixed by the statute.

Defendant further contends that the court erred in

the giving of instructions on behalf of plaintiff, and in the rejecting of others offered on behalf of the defendant.

Instruction No. 4, given at the instance of plaintiff, told the jury, in effect, that if they found the issues in favor of the plaintiff, then, in estimating her damages, they need not allow defendant any reduction or set-off on account of any payments which the West Pullman railroad company made to plaintiff in accordance with the agreement entered into between said company and plaintiff.

The point made by defendant in assailing this instruction is that it was entitled to the benefit of any moneys paid plaintiff by the West Pullman railroad. Underlying this argument is the theory of defendant that the said West Pullman railroad was a joint tort feasor. But the record is barren of any evidence in any way tending to establish that fact. Therefore, in our opinion, defendant's position is untenable.

Instruction No. 5, given on behalf of the plaintiff, informed the jury that a covenant not to sue a certain party or parties for or on account of an injury or death is not a bar or defense to a suit brought against another and different party or parties for or on account of such injury or death. The chief objection thereto is that it conveys the assumption that the aforementioned agreement entered into between the plaintiff and the West Pullman railroad was a covenant not to sue.

The aforementioned agreement recites on its face that it is a covenant not to sue, and not an accord and satisfaction of any claims which the plaintiff might have against the said West Pullman railroad, arising out of the accident in question. There is no evidence in the record which tends to dispute these recitals. We are therefore of the opinion that instruction No. 5 was proper.

Instructions Nos. 1, 2 and 7, offered on behalf of the defendant, were properly refused, because they presupposed that the West Pullman railroad was guilty of negligence in connection with the death of Purinton, whereas there is no evidence in the record to sustain such contention.

Defendant finally makes bitter complaint of the alleged misconduct of opposing counsel throughout the trial below.

An examination of the record reveals that this charge is not without foundation. Similar charges are contained in plaintiff's brief which we also find are not entirely groundless. In fact, the record is replete with altercations of counsel, wherein they rebuked each other with considerable acrimony; and the record discloses that these clashes occurred with lamentable frequency. The following excerpt from the record is typical of what transpired throughout this long trial:

MR. McSHANE: You are only hired to try one of these cases here and there for your peculiar kind of work.

MR. CONDON: My peculiar kind of work! Gentlemen of the jury, it is not following the corpse of dead men.

MR. McSHANE: Trying to beat poor widows.

MR. CONDON: Yes sir, you refer to my peculiar kind of work. I tell you, Mr. McShane, I, nor anybody in my office, has followed the corpse of dead men.

MR. McSHANE: Nobody ever did that in my office since I started practicing.

MR. CONDON: You talked to me, and I answered you.

MR. McSHANE: I say it is not true if you intimate that I have ever solicited a case directly or indirectly in my life.

MR. CONDON: I am willing to open the case, Mr. McShane, and if you will go back on the stand and testify under oath there will be some facts shown to the jury, provided you do not claim your God given con-

stitutional right. Now, we will proceed, with reference to this contract.

This court is now asked to assume the singular role of umpire in a series of personal word-bouts between counsel, which have no place in the trial of any lawsuit, in addition to making a review of the questions properly before us. It is not the province of this court, nor of any other reviewing court, to scrutinize a record with a view to determining whose conduct is the less reprehensible, or who scored the greater number of points in these personal squabbles; that question must be relegated to a more appropriate forum.

After a most careful examination of the record, we are of the opinion that the judgment should be affirmed.

*Affirmed.*

MR. PRESIDING JUSTICE BARNES dissenting.

I am compelled to dissent on the ground that the record discloses no evidence of any facts or circumstances from which the jury could infer the exercise of due care on the part of the deceased for his own safety at the time of or just prior to the accident, namely, while walking from the shanty to the tracks. Where there is no eyewitness plaintiff must make the highest proof on the subject of which the case is capable, and it may be supplied by proof of the habits of the deceased as to sobriety, prudence and the exercise of care and caution in the ordinary affairs of life. *Newell v. Cleveland, C., C. & St. L. Ry. Co.*, 261 Ill. 505. An eyewitness, however, must be one "who not only saw the deceased just at the instant of the injury but who can describe the conduct of the deceased just prior to the accident." *Cook v. Chicago, R. I. & P. Ry. Co.*, 153 Ill. App. 596. The so-called eyewitness in this case was unable to give any such description. The logic of the situation, therefore, required such proof. All he saw was a "mere shadow" and a "motion of the light" carried by the deceased, indicating a some-

what quick movement from the shanty to the tracks. It was in the interval of making that movement that the deceased was bound to exercise due care, which involved looking where he was going, else a light on the car would have been of no avail. No one could tell which way he looked, whether away from the backing train or towards it. The evidence supports two inferences, either that he was hurrying to catch his own train that was moving in the same direction further away and did not look towards the train with which he collided and which he had just been told was moving in on the tracks, or, not seeing the flat car and thinking the box car was the end of the train, he attempted to pass in front of it in order to reach his own train. But neither hypothesis nor the evidence on which it is based warrants the additional inference that he exercised due care for his own safety, and hence such care will not be presumed in the absence of proof of his habits in that respect. And this was evidently the view of appellee's own counsel for he started to make such proof but withdrew the only question designed to call it forth when it was objected to. He now argues that by reason of such objection, although he requested no ruling thereon and prevented one by withdrawing his question, whether objectionable or not, appellant is estopped from urging the necessity of such proof. It is difficult to see how a party can be relieved from proving an essential element of his cause of action by the adverse party's objection to a question relating thereto upon which a ruling of the court was not invoked but avoided.

Furthermore, a judgment should not be permitted to stand where the record, like the one here, discloses so many unchecked prejudicial remarks and unseemly colloquies in the presence of the jury.