George J. Dambacher, Administrator of the Estate of George F. Dambacher, Appellant, v. Illinois Central Railroad Company, Appellee.

Gen. No. 9,031.

Opinion filed January 15, 1937.

HOFF & HOFF, of Springfield, for appellant.

GRAHAM & GRAHAM, of Springfield, for appellee; CHARLES A. HELSELL, VERNON W. FOSTER and E. C. CRAIG, all of Chicago, of counsel.

MR. JUSTICE DAVIS delivered the opinion of the court.
On the evening of March 31, 1935, George F. Dambacher, intestate of George J. Dambacher, administra-

tor, plaintiff appellant, was killed at a crossing over the right of way of the Illinois Central Railroad Company, defendant appellee. Upon a trial of said cause in the circuit court of Sangamon county the jury returned a verdict finding defendant appellant guilty and assessing the damages of plaintiff at the sum of $10,000. Upon the hearing of a motion of defendant for a directed verdict in its favor, made at the conclusion of all the evidence, the court having reserved decision thereon until after verdict, entered judgment in favor of defendant appellee and in bar of the action. This appeal is from that judgment.

Appellant contends that the court erred in allowing the motion of defendant for a directed verdict of not guilty, made at the close of all the evidence, and in entering judgment for the defendant thereon.

The accident occurred at the village of Glenarm. At this point the tracks of defendant run in a northeasterly and southwesterly direction. A highway known as Burtle avenue crosses the tracks of the defendant in an easterly and westerly direction. U. S. Route 66, a concrete highway, passes over defendant's tracks on an overhead bridge at a point 1,218 feet northeast of the intersection of Burtle avenue and defendant's right of way. Route 66 was a much traveled highway and on March 31, 1935, Sunday night, the traffic was pretty heavy in both directions. The headlights of automobiles passing south over the viaduct on U. S. 66 appear to be one headlight when viewed by a person located near the crossing in question, owing to the angle you looked at them.

Cars passing over the viaduct at the time they cross the railroad are about 25 feet above the rails. The approach to the overpass is pretty steep and the lights of automobiles are thrown upward a trifle. There is a guard rail consisting of a plank or metal strip some 12 inches wide, supported by posts about 2½ or 3 feet

high on the west side of Route 66 for the entire length of the rise coming up to the viaduct. The rail and posts show between you and the automobile when you are down at the crossing looking at the embankment whenever an automobile crosses over the viaduct.

About 7:40 p. m. plaintiff's intestate was driving his automobile west on Burtle avenue and was struck by a passenger train of the defendant which was proceeding in a southwesterly direction at about 65 to 70 miles per hour. He was alone in the car at that time and it was dark. Clarence Alsup, the fireman on the train, was the only eyewitness to the accident. The accident occurred at 7:39 p. m. He first saw the automobile as it approached down the dirt road headed toward the west. At the time he first saw him the train was about 400 feet away. He was approaching from the fireman's side. He made a stop at the crossing when the locomotive was 150 to 200 feet away. He started again just as soon as he stopped. He stopped 8 or 10 feet from the crossing. The fireman notified the engineer when he started across the track. The headlight on the engine was burning at this time. The engineer first saw the car when the front of it showed up about 50 feet in front of the engine on his side of the train. The tracks are straight for a mile and a quarter north of where the collision occurred. The headlight on the engine was about ten feet two inches above the rail. It was equipped with a nonglare glass reflector, 14 inches in diameter, with a 2¼ inch focal arrangement. The globe has a 250 watt latest type special globe. The glass reflector will give 10 per cent more illumination than the silver plated copper reflector used in automobiles. It will give about 5,000 times the reflection of an automobile headlight.

It is insisted by appellant that the evidence discloses that to one approaching the crossing in question at night, from the east, the lights of automobiles traveling

along U. S. Route 66 over the viaduct across defendant's tracks, and lights of a locomotive approaching from the northeast appeared similar, thus presenting a confusing situation; that immediately before the accident there were cars crossing the viaduct.

In order to recover it is incumbent upon plaintiff to prove by a preponderance of the evidence that deceased was in the exercise of the degree of care required of a reasonably prudent person for his own safety.

"Railroads travel on fixed tracks and cannot be turned aside, and the danger to be encountered in entering thereon is so well known and is a matter of such common knowledge, that when a traveler on a public highway fails to use the ordinary precautions before driving thereon, the general knowledge and experience of mankind condemn such conduct as negligence." *Graham v. Hagmann*, 270 Ill. 252, 110 N. E. 337.

It is said by appellant however that where there are circumstances which tend to explain or excuse why the approaching train was not seen, then the question of contributory negligence is for the jury.

In the case of *Gills v. New York, C. & St. L. R. Co.*, 342 Ill. 455, 174 N. E. 523, where the plaintiff approached a crossing upon which there were several tracks, and on the second of which a freight train was passing, having waited until the freight train had passed, he proceeded to cross and was struck by a passenger train running on the first track. In affirming the judgment for the plaintiff, the court said:

"Only where the court can say that it was the only reasonable inference which can be drawn from the facts should a verdict be directed. Plaintiff in this case testified that he both looked and listened for an approaching train. It has been held that as a matter of law it cannot be said that a traveler is bound to look or listen, because there may be circumstances excusing

him from doing so. (*Chicago & N. W. Ry. Co. v. Hansen,* 166 Ill. 623, 46 N. E. 1071.) The facts in that case are somewhat similar to the facts in this case. In that case the court said, that what particular thing a person is bound to do for his protection in the diversity of cases that may arise and what a reasonably prudent person would do for his own safety must be left to a jury as a question of fact.''

It is contended that the evidence discloses that immediately before the accident there were cars crossing the viaduct. This contention is based upon the testimony of David C. Smart who testified he was in the club car on the train, facing west, when he saw a string of headlights and that indicated to him that there was a highway near, which was approaching the railroad at an angle. He discovered that there was an overhead crossing and, just then, as we approached the overhead bridge, the engineer sounded his whistle which indicated to me that there was another crossing farther on, probably 1,200 to 1,500 feet.

There is some conflict in the testimony as to the traffic passing over the viaduct at the time the train passed under it. Olin Peder, a witness for appellant, who lived two miles south of Glenarm on a farm, was on the overhead crossing on the evening of March 31, 1935, at about 7:40 p. m. on his way to Springfield, in an automobile headed north. He testified that there was a passenger train just northeast of the viaduct at that time; that as he was crossing there were no other automobiles close; that he met very little traffic and none right there; that the train was probably 50 to 100 yards east of the viaduct when he noticed it.

When deceased stopped his car, within 10 feet of the crossing before proceeding to cross, the evidence discloses that the train was within an estimated distance of 200 feet from the crossing with headlight burning with an estimated reflection of 5,000 times that of an

automobile headlight, he should have seen the head-light of the train and this is the only reasonable inference that can be drawn from the facts, and the light of the headlight of the train could not be mistaken for automobile lights coming up the approach to the overhead bridge. If there was the continual procession of cars passing up the approach to the overhead bridge on U. S. Route 66, as is claimed by appellant, that fact alone would easily distinguish those lights from that of the headlight of a train.

Deceased was alone and there was no obstruction at the crossing and nothing to distract his attention; the evidence fails to disclose that at the time of the accident there were automobiles passing over the viaduct, the lights from which could not be distinguished from the headlight of a locomotive.

We are of opinion that the circuit court of Sangamon county did not err in entering the judgment complained of and that the same should be affirmed.

*Judgment affirmed.*