The Krone Die Casting Company, Appellee, v. Do-Ray Lamp Company, Inc., Appellant.

Gen. No. 40,159.

Heard in the second division of this court for the first district at the June term, 1938. Opinion filed December 13, 1938.

EDWARD J. ROTHMAN, of Chicago, for appellant; MAX CHILL, of Chicago, of counsel.

BENNETT & COLBACH, of Chicago, for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

On motion of plaintiff the court struck the third amended statement of defense and counterclaim and entered judgment against defendant for $177.05, and this appeal brings the record before us for review.

The amended statement of claim recites:

"That at the special instance and request of the defendant, the plaintiff manufactured, sold and delivered to the defendant items of merchandise in the total number of 10,895 at the agreed price of $.01⅝ each; that the said items were manufactured by the plaintiff between the periods of March, 1937 and June, 1937, inclusive; that there is due and owing to the plaintiff from the defendant the sum of $177.05; that the defendant is indebted to the plaintiff in the further sum of $2.15 in the form of interest as provided by the Statutes of the State of Illinois."

Plaintiff's bill of particulars recites that

"The Chicago Accessories Brokerage Company on its purchase order No. 5025, dated February 22, 1937, and delivered to the plaintiff, was a purchase for 10,000 clamp castings at the enumerated price of 1⅝¢ each; that the defendants, after receipt of the above

order, notified plaintiff to bill the defendants for deliveries made under said order; that on or about the following dates deliveries of said item were made to the defendants and in the amounts set opposite each date, namely:

| Date | No. of Items | Total Price |
| --- | --- | --- |
| March 31, 1937 | 1345 Clamps | $21.86 |
| April 5, 1937 | 4000 Clamps | 65.00 |
| April 6, 1937 | 4650 Clamps | 75.56 |
| June 5, 1937 | 900 Clamps | 14.63 |

"That the 895 additional clamps over and above the amounts specified in the order were the additional run made by the plaintiff, and were delivered to the defendants and billed as above described and never returned."

The third amended statement of defense and counterclaim of defendant reads:

"Do-Ray Lamp Company, Inc., Defendant, by William J. Denning, its duly authorized agent, who has knowledge of the facts, in answer to the statement of Krone Die Casting Company, a corporation, says:

"1. That it is not indebted to the plaintiff in the sum of $177.05 and $2.15 as alleged in plaintiff's amended Statement of Claim and bill of particulars, or is this defendant indebted to the plaintiff in any sum whatsoever.

"2. Defendant further states that the plaintiff sold, manufactured and delivered to the defendant the merchandise consisting of clamp castings mentioned in plaintiff's Statement of Claim, which clamp castings were made from certain dies manufactured and designed by the plaintiff for the specific and particular purpose of casting said clamps, for which dies the defendant paid the plaintiff the amount agreed upon, namely, $160.00.

"3. Defendant alleges that it relied on the judgment of the plaintiff in all respects in the manufacturing of said clamp castings.

"4. Defendant further states that it informed the plaintiff the specific and particular purpose for which said clamp castings were to be used, namely, 'to hold the rim and lens of an automobile lamp together by means of a screw' and the plaintiff warranted both expressly and impliedly that the clamp castings ordered by the defendant would be fit for the specific and particular purpose for which they were to be used and intended as above set forth. Defendant further states that he informed the plaintiff that the clamp castings were not for active use by the defendant but were for the purpose of re-sale to jobbers and distributors throughout the country.

"5. Defendant further states that contrary to said warranties, the clamp castings delivered by the plaintiff were ascertained to be unfit for the specific and particular purpose for which they were warranted, and were found to be weak, defective, improperly and negligently manufactured in one or more of the following respects:

"a. The plaintiff used inferior ingredients in the mixing of the metals for the clamp castings, by reason of which said clamp castings were weak and defective.

"b. The plaintiff was negligent in the pouring of the metals in the dies by reason of which the clamp castings contained air bubbles and caused them to be weak and unfit for the purpose for which they were intended.

"c. The plaintiff was negligent in the manufacturing of the clamps in question in permitting them to be removed from the dies too soon before they were cooled, which caused them to be weak and defective.

"d. The plaintiff was negligent in manufacturing the clamps in question from dies which were inaccurate, imperfect, out of true and improperly and negligently manufactured by reason of which the clamps in question were weak, defective and useless for the purpose intended.

"e.   The clamps manufactured by the plaintiff were not finished in a good and workmanlike manner.

"6.   Defendant further states that by reason of one or more of the acts of the plaintiff enumerated in paragraph 5, the clamps in question were so defectively manufactured that they did not hold the rim and lenses in place, but broke as soon as they were put into use, causing the rims and lenses to fall out of the lamp and causing them to break and damage.

"7.   The defendant further states that by reason of the above, it was forced to replace the broken rims, clamp castings and lamps to various jobbers and distributors and suffered damages far in excess of the purchase price of the clamps.

"8.   Defendant alleges that as soon as it was informed by its jobbers and distributors of the situation concerning the clamps and started receiving returns of said clamps, it notified the plaintiff of the facts alleged herein.

"9.   Defendant alleges that the plaintiff orally agreed with the defendant at the time of the notification referred to in Paragraph 8, that in view of the facts it would make good, pay and reimburse the defendant for all the damages and expenses incurred by the defendant, which the plaintiff has so far failed to do.

"Wherefore, this defendant states that it is not indebted to the plaintiff in any amount whatsoever, and asks that a judgment may be entered in this defendant's favor, and that this defendant be dismissed with the costs most wrongfully sustained.

"Third Amended Counterclaim.

"Do-Ray Lamp Company, Inc., a corporation, counter-plaintiff, claims of Krone Die Casting Company, a corporation, as follows:

"1.   Counter-plaintiff alleges that at all times hereinafter mentioned, it was a corporation having its place

of business in the City of Chicago, County of Cook and State of Illinois, and that it is and was engaged in the business of manufacturing auto accessories and more particularly automobile lamps and lenses and marketing the same through various distributors and jobbers throughout the country.

"2. Counter-plaintiff further alleges that on, to-wit, in March, 1936, and at all times hereinafter mentioned, the counter-defendant, a corporation, held itself out to be in the special business of manufacturing dies and making castings therefrom.

"3. Counter-plaintiff alleges that the counter-defendant solicited the counter-plaintiff that it be given orders for clamps, and pursuant to said solicitation, counter-plaintiff fully informed and explained to the counter-defendant the specific and particular purpose for which said clamps were to be intended and used, namely, 'to hold the rim and lens of an automobile lamp together by means of a screw,' that the counter-defendant informed the counter-plaintiff that dies would have to be made from which the clamps would be cast, and then and there warranted unconditionally that the dies and any clamps ordered by the counter-plaintiff would be suitable and fit for the express and specific purpose for which they were intended to be used and would be finished in a good and workmanlike manner.

"4. The counter-plaintiff further alleges that fully relying and depending upon the judgment and ability of the counter-defendant who held itself out to be specialists in the art of die manufacturing, ordered said dies and in due time paid for the same the agreed sum of $160.00, which dies were designed by the counter-defendant.

"5. The counter-plaintiff alleges that thereafter, due to the express and implied warranties of the counter-defendant, that any clamps ordered by the counter-plaintiff would be fit and suitable for the specific and

particular purpose for which they were intended and would be finished in a good and workmanlike manner, ordered from the counter-defendant on or about March 31, April 5, April 6, June 5, 1937, and other times, clamp castings.

"6. Counter-plaintiff alleges that contrary to the express and implied warranties of the counter-defendant, as above set forth, it breached the said warranties in the following manner:

"(a) The clamps were weak and defective.

"(b) They were not finished in a good and workmanlike manner.

"(c) They were not fit for the specific and particular purpose for which they were intended to be used.

"7. Counter-plaintiff alleges that contrary to the express and implied warranties of the counter-defendant, the clamp castings delivered by the counter-defendant were ascertained to be unfit for the specific and particular purpose for which they were intended, and were found to be weak, defective, improperly and negligently manufactured and made in one or more of the following respects:

"(a) The counter-defendant used inferior ingredients in the mixing of the metals for the clamp castings.

"(b) The counter-defendant was negligent in the pouring of the metals in the dies by reason of which the clamp castings contained air bubbles.

"(c) The counter-defendant was negligent in the manufacturing of the clamps in question in permitting them to be removed from the dies too soon before they were cooled.

"(d) The counter-defendant was negligent in manufacturing the clamps in question from dies which were inaccurate, imperfect, out of true and improperly and negligently manufactured.

"8. Counter-plaintiff further states that by reason of one or more of the acts of the counter-defendant enumerated in Paragraph 7, the clamps in question were so defectively manufactured that they did not hold the rim and lenses together, but broke as soon as they were put into use, causing the rim and lenses to fall out of the lamp and causing them to break and damage.

"9. The counter-plaintiff further states that by reason of the above, it was forced to replace the broken rims, clamp castings and lamps to various jobbers and distributors and suffered damages far in excess of the purchase price of the clamps.

"10. Counter-plaintiff alleges that as soon as it was informed by its jobbers and distributors of the situation concerning the clamps and started receiving returns of said clamps, it notified the counter-defendant of the facts alleged herein.

"11. Counter-plaintiff alleges that the counter-defendant orally agreed with the defendant at the time of the notification referred to in Paragraph 10, that in view of the facts he would make good, pay and reimburse the counter-plaintiff for all the damages and expense incurred by the counter-plaintiff.

"12. Counter-plaintiff further alleges that it has demanded of the counter-defendant all damages sustained by the counter-plaintiff by reason of the unfit and defective clamp castings sold to it.

"13. That by reason of the premises, the counter-plaintiff has suffered damages in the following respects:

"(a) The die manufactured by the counter-defendant for which counter-plaintiff paid the sum of $160.00 is useless and the purchase price should therefore be refunded.

"(b) It was required to and did replace lenses and lamps to numerous of its customers for which it should be reimbursed.

"(c)  It has become liable for large divers sums of money for damages sustained by numerous of its customers by reason of breakage caused by the defective clamp castings for which it should be indemnified.

"(d)  The good will and good name of its business was impaired and injured and harmed for which it should be compensated.

"(e)  It has lost numerous of its customers and has thereby lost great profits for which it should be compensated.

"(f)  It has lost the use and distribution of the automobile lamps with lenses, which were to be held in place by the said clamp castings, and has by said loss of distribution suffered great damage, for which it should be compensated.

"Wherefore, counter-plaintiff asks for judgment against the counter-defendant in the sum of $5,000 and costs of this action."

Plaintiff moved to strike the third amended statement of defense and counterclaim "for the reason that the same does not state a defense or cause of action." At the hearing defendant made an oral motion to strike the motion of plaintiff on the ground that it failed to set forth in what particular or particulars the statement of defense and counterclaim failed to set forth a defense or cause of action. The court denied defendant's motion to strike the motion made by plaintiff, and after argument sustained plaintiff's motion and entered judgment accordingly.

In logical sequence the first proposition to consider is the contention that the motion on which the court acted in entering judgment was not adequate under Rule 101 of the municipal court of Chicago, which reads:

"Every application to the court in relation to a pleading, other than one made orally in open court at the time of a trial or other proceeding, shall be made

by motion in writing signed by the party proposing it, or by his attorney, specifying particularly what is sought by the motion. . . . If it be made on the ground of insufficiency in law it shall specify in what particular or particulars the pleading is insufficient in law, and, if such insufficiency results from the omission of, or defect or defects in, some allegation or allegations of fact necessary to establish a good cause of action or defense, the absence of, or defect or defects in, such allegation or allegations must be specifically pointed out, in order that the opposite party may be afforded an opportunity to make the pleading good by amendment or amendments, if the facts justify such amendment or amendments.'' It is apparent that at best the motion would be the equivalent of a general demurrer. Plaintiff seeks to justify the practice followed by citing Rule 307, Revised Civil Practice Rules of the municipal court of Chicago:

''The rules of The Municipal Court of Chicago are to be liberally construed to the end that controversies may be speedily and finally determined according to the substantive rights of the parties and no complaint of a departure from any rule or rules during the proceedings in any action shall be effective when it clearly appears that notwithstanding such departure no injustice has resulted to the party complaining.'' If defendant had argued the motion without calling attention to the fact that plaintiff's motion did not comply with the rule it might be urged that defendant could not now complain. Defendant, having insisted on compliance with Rule 101, we are of the opinion that Rule 307 is not a valid answer to the point raised. The rule which requires that motions set up the grounds on which they are based is a good one. It informs attorneys of what they are expected to meet, prevents surprise, and facilitates the disposition of cases. Had the motion specified the grounds to be urged on the court,

as required by the rule, defendant would have had the opportunity of conceding the points before argument, and of asking leave to file an amendment obviating the objections.

The second point urged is that the third amended statement of defense and counterclaim has alleged a good defense and a good counterclaim. The following are pertinent provisions of the Uniform Sales Act (secs. 49, 69 and 70, ch. 121½, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 121.53, 121.73, 121.74]):

"Sec. 49. In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."

"Sec. 69. (1) Where there is a breach of warranty by the seller, the buyer may, at his election—

"(a) Accept or keep the goods and set up against the seller, the breach of warranty by way of recoupment in diminution or extinction of the price.

"(b) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty.

"(c) Refuse to accept the goods, if the property therein has not passed, and maintain an action against the seller for damages for the breach of warranty.

"(d) Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid.

"(2) When the buyer has claimed and been granted a remedy in any one of these ways, no other remedy can thereafter be granted.

"(3) Where the goods have been delivered to the buyer, he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind, or if he fails to return or to offer to return the goods to the seller in substantially as good condition as they were in at the time the property was transferred to the buyer. But if deterioration or injury of the goods is due to the breach of warranty, such deterioration or injury shall not prevent the buyer from returning or offering to return the goods to the seller and rescinding the sale.

"(4) Where the buyer is entitled to rescind the sale and elects to do so, the buyer shall cease to be liable for the price upon returning or offering to return the goods. If the price or any part thereof has already been paid, the seller shall be liable to repay so much thereof as has been paid, concurrently with the return of the goods, or immediately after an offer to return the goods in exchange for repayment of the price.

"(5) Where the buyer is entitled to rescind the sale and elects to do so, if the seller refuses to accept an offer of the buyer to return the goods, the buyer shall thereafter be deemed to hold the goods as bailee for the seller, but subject to a lien to secure the repayment of any portion of the price which has been paid, and with the remedies for the enforcement of such lien allowed to an unpaid seller by section 53.

"(6) The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from a breach of warranty.

"(7) In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the dif-

ference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty.''

''Sec. 70. Nothing in this act shall affect the right of the buyer or the seller to recover interest or special damages in any case where by law interest or special damages may be recoverable, or to recover money paid where the consideration for the payment of it has failed.''

Defendant's theory, as a defense, is that it is entitled to recoup for losses as to clamps not covered by the counterclaim, as against plaintiff's claim for the sale and delivery of 10,895 clamps. The basis of the counterclaim is that plaintiff supplied a defective die for which the purchase price had been paid, and sold and delivered 60,000 defective clamps for which the purchase price had been fully paid. A reading of the statement of defense and counterclaim shows that it sets forth all the essential elements contemplated by the Uniform Sales Act. So far as the defense is concerned, the statement thereof comes within paragraph (a) of section 69 heretofore quoted. Defendant accepted the goods and set up the loss by way of recoupment in diminution or in extinction of the price. Passing to a consideration of the counterclaim, it will be noted that section 49 provides that the acceptance of the goods shall not discharge the seller from liability in damages or other legal remedy for the breach of any warranty, provided, after the acceptance the buyer gives notice to the seller of the breach of warranty within a reasonable time after the buyer knows or ought to know of such breach. The pleading shows the warranty, the breach thereof, the giving of notice, and the damages suffered. The chief criticism leveled at the pleading by plaintiff, and the one the trial court emphasized, is that the date of the notice is not averred. Paragraphs 10 and 11 recite, in substance, that as soon as defendant

was informed by its jobbers and distributors of the situation concerning the clamps and started receiving returns of said clamps, it notified plaintiff of the facts alleged, and that plaintiff orally agreed with defendant at the time of the notification that plaintiff would make good and pay and reimburse defendant for all the damages and expenses incurred by defendant.

We have examined the authorities cited by defendant on the proposition that the mere statement that reasonable notice was given, without setting up the date thereof, is sufficient. The cases, in the main, do not discuss the subject of pleading. They dwell on the merits of the respective cases from the standpoint of substantive law. In the case of *Elkus Co. v. Voeckel,* 27 Ariz. 332, 233 Pac. 57, a general demurrer attacked a pleading which recited that reasonable notice had been given, and the court held that the pleading was not vulnerable to such a demurrer. That is in accordance with our view, as applied to the motions under consideration here. An objection that the pleading did not give the approximate date of the notice or notices should be specific. While it is true that the question whether notice was given within a reasonable time is one of fact to be determined by the jury, nevertheless, where all reasonable minds would reach the conclusion that the goods were retained an unreasonable length of time before any complaint was made, it then becomes a question of law for the court. Our view is that on proper motions a litigant who asserts that he gave notice within a reasonable time should state with a reasonable degree of certainty the approximate time when he learned of the breach or breaches and the approximate time thereafter when he gave the notice or notices. In view of the fact that plaintiff's motion did not specify the points on which it relied the motion to strike defendant's statement of defense and counterclaim should have been denied. Had plaintiff made the mo-

tion specific, in all likelihood defendant would have supplied the omission. That is indicated by the fact that when plaintiff's motion to strike was sustained defendant asked leave to amend by supplying the omission, which leave the court declined to grant. In connection with this phase of the case plaintiff argues that another rule of the municipal court permitted the court to strike the statement of defense and counterclaim on the ground that it shows no reasonable cause of action or defense. The record shows that the order and judgment were entered on motion of plaintiff and not on the court's motion.

Plaintiff urges that under the Uniform Sales Act defendant, by asking for a recoupment, elected its remedy and that such election bars it from the remedy of seeking damages on account of a warranty. We have pointed out that the statement of defense seeks recoupment or diminution as to certain merchandise, and the statement of counterclaim seeks damages for a breach of warranty as to other shipments of merchandise. Normally, where goods are received and the buyer, who claims a breach, does not return them and his claim for damages is less than the amount of the seller's bill, he will wait until the seller sues him and then set up his defense. Where the damages asserted are greater than the vendor's bill, vendee usually sues or sets up the claimed damage in a counterclaim. Plaintiff also asserts that the true measure of damages in a case of this character is the difference between the value of the goods furnished and the value of the goods that should have been furnished in compliance with the warranty. That point clearly should have been raised in the motion to strike. As pointed out by defendant, it was not raised in the motion and it was not raised orally before the trial court, and is mentioned for the first time in this court. However, as the case is being remanded, we invite attention to the following in 2 Sedgwick (8th Ed.) 479, sec. 766:

"Where an article is warranted fit for a particular purpose, the purchaser can recover the damages caused by an attempt to use it for that purpose. This sometimes gives a larger measure of recovery than would be allowed under the ordinary rule. Where the chattel sold has different values, according to the use for which it is intended, the value which measures the damage is that which the vendor represented it to have with reference to the purpose to which he knew it was to be applied by the vendee." We are inclined to the view that the items of damage in paragraphs (d), (e) and (f) are too remote, and on a proper motion would be stricken. Defendant could likewise be required to be more specific as to the damage claimed.

For the reasons stated the judgment of the municipal court of Chicago is reversed and the cause is remanded for trial with directions that plaintiff's motion to strike the third amended statement of defense and counterclaim be overruled.

*Judgment reversed and cause remanded with directions.*

FRIEND, P. J., and JOHN J. SULLIVAN, J., concur.