Grover R. Lutgert, Trading as Lutgert Bros., Appellee,
v. Fred Schaeflein et al.
Appeal of Frank Wippel and Helen Wippel, Appellants.

Gen. No. 42,414.

Opinion filed March 10, 1943.

FRISCH & DE HAAN, of Chicago, for appellants; GEORGE J. FOX, of Chicago, of counsel.

RUDOLPH L. JOHNSON, of Chicago, for appellee; RUDOLPH L. JOHNSON and CECIL L. CASS, both of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Grover Lutgert, doing business as Lutgert Bros., filed his statement of claim in the municipal court of Chicago against Fred Schaeflein, asking judgment in the sum of $283.95 for coal, coke, scaffold horses and brick sold in 1938, 1939 and 1940. Included in the articles sued for were certain bricks used in the construction of a building for Frank Wippel and Helen Wippel, husband and wife. Subsequently, defendant Fred Schaeflein, upon order of court, impleaded Frank Wippel as third party defendant. Fred Schaeflein filed his statement of claim against Frank Wippel and alleged that he entered into a contract with Wippel for the furnishing of labor and materials

for the mason work required for the construction of a building at 3901 W. 60th place, Chicago; that he, Schaeflein, performed all of the work and furnished all of the materials required and called for by the contract; that there was due to Schaeflein from Frank Wippel, under the terms of the contract, the sum of $240, being $200 for brick and $40 for an iron rail furnished and installed in the premises; and he asked judgment against Wippel in the sum of $240. The third party defendant, Frank Wippel, and his wife, Helen Wippel, pursuant to the prayer of a petition and an order of court, filed a counterclaim against the defendant, Fred Schaeflein, and against the original plaintiff, Grover Lutgert, for damages of $3,000, alleged to have been sustained by reason of the furnishing and installing of defective bricks in the building at 3901 W. 60th place, Chicago. All three claims were tried together before the court and a jury. Verdicts were directed in favor of Schaeflein for $240 in the issue between him and Frank Wippel and in his (Schaeflein's) favor and against the Wippels in their counterclaim against him. Two remaining issues were submitted to the jury, namely, the one between the original plaintiff, Lutgert, and the defendant, Schaeflein, wherein Lutgert claimed $283.95, and the other between the counter-plaintiffs, Frank and Helen Wippel, and Lutgert in the sum of $3,000. On the issues between the original plaintiff Lutgert and the original defendant Schaeflein, the jury returned a verdict for plaintiff in the sum of $75. On the issues between counter-plaintiffs Frank and Helen Wippel and the original plaintiff Lutgert the jury returned a verdict for $2,500 in favor of the counter-plaintiffs Frank and Helen Wippel. A motion for a new trial filed by Lutgert was sustained. This court allowed the petition of counter-plaintiffs Frank and Helen Wippel for leave to appeal from the order granting a new trial.

The issues in the case arose out of the construction of a two story dwelling at 6038 S. Springfield avenue, Chicago. This lot is also known as 3901 W. 60th place, at the southwest corner of Springfield avenue and 60th place. Counter-plaintiffs entered into various contracts for the construction of the house. Frank Wippel had been in the building construction business for 15 years and had built about 300 buildings. He erected eight other buildings in the same block, six for other owners and two for himself. He erected 35 or 40 buildings in that vicinity. Plaintiff Grover R. Lutgert is a wholesale dealer in bricks, doing business in Chicago. He is also in the coal business. He furnished certain coal, building materials and bricks to Fred Schaeflein and asked judgment for a balance of $283.93 for these items. The bricks alleged to have been furnished were used in the construction of the dwelling being erected for Frank and Helen Wippel. Fred Schaeflein was the mason contractor and claimed a balance of $240 from Frank Wippel on the contract. Schaeflein joined Frank Wippel as third party defendant to recover this balance due him and the Wippels thereupon filed a counterclaim against Schaeflein and Lutgert for alleged damages in the sum of $3,000, sustained through the furnishing and installing of defective bricks.

Prior to the commencement of the construction, Dick Helwig, a salesman of Lutgert, called on the Wippels and exhibited to them samples of various kinds of face brick and quoted them prices. The Wippels chose a type of brick known as Veederburg Colonial Buff at a cost of $25 per 1,000 in carload lots. This brick seemed suitable to them and they arranged for a full carload, to be used on three sides of the proposed building. Schaeflein was directed by the Wippels to secure these Veederburg bricks from Lutgert. The bricks were delivered in January 1940, and the building was completed in May 1940. Within a month

or two after being installed in the building, nearly all the bricks became white in color and large numbers of them began to deteriorate, crack and crumble and the faces to break off. Numerous of these defective bricks were removed and replaced, in which operation the plaster on the inside walls was cracked and the decorating damaged. At the time of the trial numerous bricks were still crumbling and the building was still discolored. Testimony by one witness was that the only satisfactory way to repair the building would be by removing the entire layer of face brick and replacing with proper brick at an estimated cost of $3,000 and another witness testified that such cost would be $2,500. These witnesses further estimated the difference in the value of the house as constructed with the bricks as furnished, and if constructed with proper bricks, would be $3,000 and between $2,000 and $2,500. Testimony was given that the counter-defendant Lutgert knew at the time of the sale and delivery of the bricks that they were inferior and defective, and admitted that they were. No testimony in rebuttal of this evidence was produced, although three men who were present at the conversation appeared as witnesses in the case. The trial was primarily on the issues, as fixed by the counterclaim, very little time being spent or testimony taken on the other issues. The trial court permitted testimony to be given as to the value of the building and gave the instructions requested by the counter-plaintiffs on the measure of damages and sale by sample. Upon argument on the motion for a new trial, the trial judge held that the instruction he had given relative to the measure of damages was erroneous, and further stated that he felt the issues presented by the case were too complicated for the jurors' comprehension.

Where there is a conflict in the evidence as to the facts, the granting of a new trial is within the trial court's discretion and will not be disturbed unless

abused. However, the correctness of a ruling on a question of law will be determined on appeal independently of the judgment of the trial court. 5 C. J. S., sec. 1620; *Randall v. Randall,* 281 Ill. App. 169. The following statements were made by the trial court as to the reason for granting the motion for a new trial:

"I think I was in error in the rule of damages applied. I think the verdict is excessive. I don't think the measure of damages was proper. I know of no rule or law that would permit a man to recover damages where the brick has been put into a building and something has happened as happened in this case. The case was mixed up badly by the fact of having three separate and distinct claims for the jury to decide. It was never contemplated in my mind that Lutgert should be held accountable for damages of this nature. I don't think the claims should have been decided together. Two simple little contract claims for small amounts tied up with quite a claim for damages. I think I will let this case against Lutgert for damages be tried alone. . . . I never anticipated such a result at the start of the case. It started with a little simple suit and winds up with a considerable verdict. Lutgert didn't seem very much concerned about it. I noticed his attitude in court. He seemed to think it was a nickel and dime proposition. . . . It is strictly a sale by sample—all hands agree on that. It is a sale by sample and an obvious breach of contract. I might say for the purpose of argument that the contract was breached, that the bulk did not correspond with the sample. These are the facts in the case—now what is the measure of damages. The facts show that the brick in question did not correspond with the sample; were used in the construction of the building and began to peel and crack and it is evident that the value of the building was less, but the bricks were used and there was never any offer to return them or anything like that. The contractor had nothing to do

with picking out the brick and could not, as far as I can see, be held responsible. Undoubtedly, the bricks peeled, there is some question of that, but the jury decided that. I would not disturb the question of fact that the jury decided. The only thing I am concerned about is: Did we give them the proper measure of damages? I do not quarrel with the verdict of the jury. As the instructions went, I think the verdict was all right. . . . I have come to the conclusion that I should grant a new trial in this case. I think the court committed error in the charge to the jury and I think it was partly due to the fact that it was a counterclaim which became mixed up with a simple contract suit and so the issues became confused. I think that the jury was prejudiced on this contract claim. I believe that I committed error. I was about to direct a verdict but I thought it would be better to have a jury verdict than a directed verdict. . . . I feel that the case was decided in connection with a simple contract suit, and that the jury was prejudiced by the evidence they heard in that case, which had no application to the counterclaim. I had three separate cases before the jury. I directed the verdict in on and I submitted it to the jury in the two others and so the issues became a little confused, in my opinion."

The attorney for the counter-plaintiffs then stated:

"Will your Honor specifically state for the record, your reasons for granting a new trial. I understand the Appellate Court likes to have them when they consider a motion for a new trial. Do you feel that the instruction on the measure of damages was improper?

The court replied, "I do." The attorney then stated:

"Do you feel that the measure of damages in a case of this kind is only the difference in the price of the article, if it had been as supposed to have been purchased? The difference in the value of these bricks, if they had been good bricks?

The trial judge said: "I think that is the proper measure of damages, yes, in a case of sale by sample." The court stated further:

"I think there should be a new trial which could be had without the confusion that was caused by a simple contract issue along with this claim for damages. The jury became confused and prejudiced by the evidence in one case which had no application whatsoever on the claim for damages."

It will be observed that the trial judge stated that the transaction constituted a sale by sample and that the evidence showed "an obvious breach of contract." He also found that "the brick in question did not correspond with the sample"; that the bricks were used in the construction of the building; that they began to peel and crack and "it is evident that the value of the building was less." The record clearly shows that the new trial was not granted because the verdict was contrary to the manifest weight of the evidence. The trial judge expressly stated that he "would not disturb the question of fact that the jury decided." He allowed the new trial because he felt that the instruction he had given relative to the measure of damages was erroneous and the issues presented by the case too complicated for the jurors' comprehension. The court instructed the jury that "in the case of a sale by sample, if the seller is a dealer in goods of the kind in question, there is an implied warranty that the goods shall be free from any defect rendering them unmerchantable, which would not be apparent on reasonable examination of the sample." Lutgert urges that it was error to give this instruction because there was no evidence that the bricks delivered did not correspond to the sample in quality. He also urges that as the purchasers had an opportunity to inspect the bricks, there was no sale by sample and that there can be no recovery on the ground of warranty. The testimony shows that the bricks were purchased from the

sample. Lutgert admitted in his affidavit of defense that the sale was a sale by sample. In arguing for a new trial, his counsel stated that ''I think we are in accord on the fact that the bricks were sold from a sample, our whole defense was that the brick was as per sample and there was nothing defective.'' In our opinion, the transaction was ''a sale by sample.'' As to the contention that the Wippels had full opportunity of determining for themselves the quality of the bricks, the record shows that the only opportunity for inspection came after the bricks were delivered to the job. Some of the bricks were found to be chipped and this was the only defect called to the attention of the Wippels. The testimony shows that the chipped bricks were not used in the construction of the building by direction of Lutgert's salesman, Helwig. The bricks thus rejected could not have contributed to the breaking away and spalling which occurred after the building was constructed. Plaintiff was a dealer in bricks. The bricks did not correspond with the sample in quality. They were defects which, on testimony of plaintiff's own witness, could not be discovered except by an expert brick man. The instruction on sale by sample follows the language of section 16 of the Uniform Sales Act (sec. 16, ch. 121½, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 121.20]). We are of the opinion that the instruction was applicable to the facts of the case and that it correctly stated the law.

The court also instructed the jury that ''in the event you find for the counter-plaintiffs, Frank Wippel and Helen Wippel, you then should consider the question of their damages, and in considering the amount of their damages you are instructed that the measure of the damages is the difference between the value of the building as constructed and the value of the building as it would have been had bricks of proper manufacture and ingredient been used, or in the al-

ternative, if you find that the bricks were defective, the measure of damages shall be the cost of replacing the defective bricks with bricks of proper manufacture and ingredient, whichever amount shall be the lesser." The trial judge believed that in giving this instruction he committed error. In fixing the amount of damages it is evident that the jury followed this instruction. Paragraph 6 of section 69 of the Uniform Sales Act (sec. 69, ch. 121½, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 121.73]) provides that "the measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary cause of events, from a breach of warranty." The trial judge felt that the correct measure of damages would be the cost price of the bricks. It is apparent that to permit a recovery of but the cost of the bricks ($362.50) would fall far short of compensating the Wippels for the damages sustained. There is abundant evidence that the bricks peeled off or spalled, which not only resulted in a most unsightly appearance, but weakened the building and made it extremely difficult if not impossible to sell. The evidence is uncontradicted that to repair the building would necessitate the removal and replacement of the outer layer of face brick, an arduous and costly undertaking, involving probable damage to the interior. We agree with the Wippels that the cost price of the brick would not be a fair or adequate amount to compensate for the actual damages, shown by the uncontradicted testimony to be between $2,000 and $3,000. The breach of the implied warranty, together with special circumstances showing damages of a large amount, which directly and naturally resulted from the breach, has been proven and the measure of damages therefore comes within the terms of the statute. In the case of *Krone Die Casting Co. v. Do-Ray Lamp Co., Inc.*, 297 Ill. App. 602, 617, in discussing the rule as to the measure of

damages, we quoted with approval from 2 Sedgwick (8th ed.) 479, sec. 766:

" 'Where an article is warranted fit for a particular purpose, the purchaser can recover the damages caused by an attempt to use it for that purpose. This sometimes gives a larger measure of recovery than would be allowed under the ordinary rule. Where the chattel sold has different values, according to the use for which it is intended, the value which measures the damage is that which the vendor represented it to have with reference to the purpose to which he knew it was to be applied by the vendee.' "

We are of the opinion that the instruction as to the measure of damages correctly stated the law under the circumstances disclosed by the evidence. Lutgert contends that the instruction was erroneous for the further reason that there is no implied warranty as to quality by a vendor who is not a manufacturer, citing *Dravo Doyle Co. v. Sulzberger & Sons Co.*, 197 Ill. App. 547. That case did not involve a sale by sample. In the case at bar the Wippels relied on a sale by sample under the provisions of section 16 of the Uniform Sales Act providing that there is an implied warranty that the goods shall be free from any defect rendering them unmerchantable, which would not be apparent on reasonable examination of the sample. The rule stated in the *Dravo* case is not applicable to the factual situation before us.

We are of the opinion that the trial judge did not err in giving the two instructions which he later found were erroneous.

The only other ground for granting a new trial was that the court felt that the issues presented were too complicated for the jurors' comprehension. The rules of the municipal court of Chicago expressly give a defendant the right to serve a "third party claim"

upon a person not a party to the action who is or may be liable to the defendant or to the plaintiff for all or part of plaintiff's claim against the defendant. (Rule 25.) The Civil Practice Act likewise permits the making of any party defendant who is alleged to have or claim an interest in the controversy, or in any part thereof, or in the transactions out of which the same arose. Section 24, Civil Practice Act (sec. 148, ch. 110, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 104.024]). Lutgert sued Schaeflein and the latter brought Frank Wippel into the case. The Wippels then filed a counterclaim against both Schaeflein and Lutgert. It cannot be doubted that a person brought into a lawsuit on the theory of securing complete determination of all issues arising out of the transaction, has the right to proceed by counterclaim against the original plaintiff or the original defendant or both if the nature of his claim so warrants. The court has ample power to order separate trials where the trial of all the issues presented by the various parties might tend to confuse the jury. In the instant case all of the parties and the trial judge apparently believed that the issues were not complicated and that the jury would understand the respective contentions. All of the parties willingly submitted the issues to the jury. It will be recalled that the court directed a verdict on the claim of Schaeflein against Frank Wippel and also directed a verdict for Schaeflein on the counterclaim of the Wippels on the ground that the sale of the bricks had been solicited and made directly from Lutgert to the Wippels. The case submitted to the jury presented two issues, the claim of Lutgert against the original defendant for $283.95 on which a verdict was returned in favor of plaintiff for $75, and the claim for damages by the Wippels against Lutgert. Most of the testimony related to this claim. In our opinion the issues presented to the jury were not complicated. They were simple issues which men

and women of reasonable intelligence would understand. The record presents a case where the trial judge granted a new trial because he believed he erred in instructing the jury and because he felt the issues were so complicated that the jurors were confused. We find that the trial judge did not err in instructing the jury and we are satisfied that the issues were not complicated. The parties apparently recognized this as they did not suggest to the court that there should be a separate trial on any of the issues.

For the reasons stated, the order of the municipal court of Chicago granting a new trial is reversed, and the cause is remanded with directions to enter judgment on the verdict.

*Order reversed and cause remanded with directions.*
HEBEL and KILEY, JJ., concur.