DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1919.

---

## Sol Segal, by David Segal, Appellee, v. Chicago City Railway Company, Appellant.

### Gen. No. 24,735.

1. STREET RAILROADS, § 75*—*when running car at speed of 10 miles an hour does not constitute negligence.* In an action to recover for injuries to a child struck by a street car while playing in paving material piled near the track which concealed him from sight until the car was only a few feet away, it cannot be said that it was negligence to run the car at a rate of 10 miles an hour in the middle of the block, neither roadway of which, by reason of paving repairs in progress, was being used for traffic.

2. STREET RAILROADS, § 69*—*when motorman's failure to ring gong does not constitute negligence as to child.* It cannot be said that a motorman operating a street car at a rate of 10 miles an hour in the middle of a block, neither roadway of which is being used for traffic, on account of paving repairs being in progress, is guilty of negligence, as to a child struck by the car, in failing to have rung the car gong, where the child was not visible, owing to the fact that he was concealed by the paving material, until too late for the accident to have been averted.

3. STREET RAILROADS, § 69*—*when motorman is not required to anticipate child's presence near track.* A motorman operating a car

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

(11)

in the middle of a block which is being paved and is not being used for traffic is not required to anticipate that a child will be playing in the piles of paving material piled close to the rails.

4. STREET RAILROADS, § 74*—*motorman not required to look in one place all the time*. While it is a motorman's duty to look along the whole line of the street to guard against collision with any one likely to come ·in the way of the car, he is not called on to look in any one place all of the time.

5. STREET RAILROADS, § 131*—*when evidence in action for injuries to child is insufficient to support finding of negligence*. In an action to recover for injuries to a child struck by a street car while near the track, where it appears that the child, who was a few months under 8 years old, was playing between or about piles of paving material piled close to the track, that the block was not being used for traffic, by reason of repairs, and the car was going at about 10 miles an hour, that the child was not seen by passengers standing on the front platform · until the car was within 15 to 25 feet of him, and not by the motorman, who was sitting, until the car was within 10 feet of him, *held*, that such evidence is insufficient to support a finding that the motorman would, by ordinary and reasonable care, have discovered the child in time to have stopped the car, or that defendant was negligent in operating the car or in omitting any duty owed the boy.

6. APPEAL AND ERROR, § 1300*—*when plaintiff presumed to have presented best evidence that he had, etc.* On appeal, it will be assumed, in the absence of any adverse ruling precluding him from producing it, that plaintiff either presented the best evidence that he had or presented such evidence as he was willing to go to trial upon.

7. APPEAL AND ERROR, § 1803*—*when Appellate Court will not, on reversing judgment for plaintiff, remand for new trial*. On reversing a judgment for plaintiff, the Appellate Court will not remand the cause for a new trial merely because the record supports the inference that additional evidence favorable to him may be procured.

8. APPEAL AND ERROR, § 1810*—*when final judgment will be entered on reversal*. Where a reversal is predicated not on an error of law, but on a finding of fact which precludes recovery, there is no justification for remanding the cause for a new trial, and a final judgment will be entered reciting the fact as found.

(Opinion of MATCHETT, P. J., non-concurring on duty to remand.)

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Segal v. Chicago City Ry. Co., 216 Ill. App. 11.

Appeal from the Superior Court of Cook county; the Hon. JOSEPH H. FITCH, Judge, presiding.  Heard in the Branch Appellate Court at the October term, 1918.  Reversed with finding of fact.  Opinion filed December 2, 1919.

CHARLES LE ROY BROWN, for appellant; JOHN R. GUILLIAMS and ROBERT J. SLATER, of counsel.

JAMES C. MCSHANE, for appellee.

MR. JUSTICE BARNES delivered the opinion of the court.

This appeal is from a judgment for personal injuries received by a minor from having his hand run over by the wheels of one of appellant's street cars while it was running south in Wentworth avenue, Chicago, at about the middle of the block between 37th and 38th streets, the latter, however, not extending west of Wentworth avenue.  Paving work was in progress between 36th and 38th streets.  The old pavement had been removed in the vicinity of the place of the accident west of the street car tracks and piles or rows of sand, crushed stone and gravel had been deposited between the west track and the west curb from 37th to 38th street.  Neither the roadway east nor west of the track was in use for traffic.  Much of the material had been dumped from automobile trucks while on the car track with their back wheels against the west rail of the track, thus dumping the material close to the west track.  These piles were irregular in size and shape and extended from near the car track nearly over to the curb.  In places they were 3 to 4 feet high and tended to obstruct the view along the street.  They came close together at their base and in some places were from 2½ to 5 feet apart.  Plaintiff was then about 7 years and 9 months of age, and was playing between piles of this material near the west track.

As usual in cases where witnesses are called on to state their recollections of what occurred in a brief space of time they differed in details, especially with respect to the boy's position with reference to the piles. They agreed that he was bending or stooping over or squatting down playing with the sand and pebbles, some testifying that his back was towards the car track, others that he was facing either south or towards the street car. Six witnesses placed him on the ground between two piles close together, another on a north side of a pile, another on the south side of a pile, and another, a little boy less than 7 years of age at the time of the accident, in the middle of the slope of a pile towards the track changing his position from time to time. Taking the evidence all together we think it tended 'to show that whatever way he was facing and whether at the bottom or on the side of a pile he was in a position not to be seen by the motorman until the car was in close proximity to him. Most of the testimony on that subject was consistent with that of three witnesses standing at the time on the front platform of the car to the effect that though they were looking in the direction it was going they did not see the boy until the car was within 15 to 25 feet of him, and the testimony of the motorman, who was sitting, that he did not see the boy until the car was within 10 feet of him.

Just before discovery of the boy the motorman had thrown off the power to slow the car as it approached the workmen at a mixer about 125 to 150 feet away. The evidence indicates that the car was running about 10 miles an hour when the accident occurred, and it is undisputed that at such speed the car would run at least 50 feet before it could make an emergency stop. As, therefore, the car could not, after the motorman saw the boy, have been stopped before practically its entire length had passed him, the motorman, thinking

him far enough away from the car in any event not to be hit—as there was much evidence tending to show—did not ring the gong for fear of startling the boy and causing him to expose himself to greater peril. Whether the boy was hit by the overhanging portion of the car or in some manner slipped or fell towards it, as some evidence tends to show, cannot be said to have been established with any degree of certainty, and would be immaterial provided a preponderance of the evidence shows, as we think it does, that he was in such a position with reference to the piles of material as not to be discoverable until the car was too near him to avert the accident. The rear wheels of the car ran over his hand, and it was after the front of the car passed the boy that a jar was noticed by the witnesses on the car and the motorman, which led the latter then to apply the emergency brake. When the car stopped its rear was about 20 feet beyond the boy.

Considering the place and circumstances, it certainly cannot be said if the car was going in the middle of a block only about 10 miles an hour and if the boy was not visible to the motorman until too late to avert the accident that there was negligence in operating the car either in the rate of speed or in not ringing a warning bell. To say that he should have anticipated the presence of the child in such a place would be to require a higher degree of care under the circumstances than the law imposes.

While it was the motorman's duty to look along the whole line of the street to guard against collision with any one likely to come in the way of the car, he was not called on to look in any one place all the time; and if those standing near him and looking forward did not see the boy before the car was within 15 to 25 feet of him, it must have been because his position between said piles prevented seeing him; and presumably the motorman, sitting as he was below their plane of vi-

sion, could not see him before, if as soon as, they did. We have carefully scrutinized the evidence in this case and think the great weight of the testimony is against the theory that the motorman would by ordinary and reasonable care have discovered the boy before it was too late to stop the car running at a reasonable rate of speed or that defendant was negligent as charged either in operating the car or omitting to perform any duty it owed to the boy under the circumstances.

Reaching this conclusion we need not consider the question of contributory negligence nor analyze the evidence more closely merely to discuss other inferences from detached portions of the evidence given by plaintiff's witnesses who occupied less advantageous points of view and whose testimony as a whole is weakened by much uncertainty and considerable contradiction. Suffice it to say that comparing the character, intelligence and apparent reliability of the witnesses, their opportunities for observation, and the consistency of their testimony, we think the preponderance of the evidence is clearly against the verdict thus necessitating, in the exercise of our powers and duty, a reversal of the judgment with a finding of fact that there was no negligence on the part of appellant.

After filing an opinion substantially as above, appellee petitioned for a rehearing, insisting that the verdict was warranted by the evidence, but after a thorough review of the same in the light of his contentions our convictions remain unchanged.

But appellee further contends that in case of reversal we should remand the cause for a new trial, saying that as the evidence shows there was "a large number of men employed on the street close to the place of the accident, who did not testify, * * * it is probable that upon another trial additional witnesses could be procured."

Even if the record supported the inference—and it does not—that additional evidence favorable to plaintiff might be procured, yet we must assume, in the absence of any adverse ruling precluding him from producing it, that he either presented the best evidence he had or at least such as he was willing to go to trial on. To remand on the mere possibility of procuring additional evidence would be contrary to the policy of the law. To warrant a new trial on such ground, even a trial court would require a showing of due diligence to procure all evidence obtainable at the time of the trial. (*Graham v. Hagmann,* 270 Ill. 252.)

Besides the reversal being predicated on our finding of a fact that precludes recovery and not on an error of law, we find no justification under our practice for remanding the cause for a new trial. The Supreme Court has not only said it is the ''bounden duty'' of Appellate Courts to consider the assignment of error that the verdict is against the weight of the evidence, and ''correct errors of fact'' (*Voight v. Anglo-American Provision Co.,* 202 Ill. 462, 465) ''to weigh the evidence and determine whether the verdict is against the weight of the evidence'' (*Illinois Cent. R. Co. v. Smith,* 208 Ill. 608, 620) and ''to reverse the judgments of trial courts' and the verdicts of juries where, upon consideration of the testimony, they find said judgments and verdicts are clearly against the weight of the evidence'' (*Chicago & A. R. Co. v. Heinrich,* 157 Ill. 388, 394), but it has clearly indicated the impropriety of remanding a cause for a new trial when the Appellate Court in the exercise of such duty reaches a conclusion of fact different from the finding of the trial court that would preclude recovery. In *Senger v. Town of Harvard,* 147 Ill. 304, it said: ''Under the facts as found, if no recovery could be had against the defendant there was no necessity for remanding the cause, and the court was under no obligation to do so.'' (p.

307.)' In *Hawk v. Chicago, B. & N. R. Co.*, 147 Ill. 399, it said: "Here the Appellate Court found the facts different from the finding in the Circuit Court, and in obedience to the section of the statute, *supra,* the facts as found were recited in the judgment of the Appellate Court." (p. 402.) In *Borg v. Chicago, R. I. & P. Ry. Co.*, 162 Ill. 348, it justified "a refusal to remand the case for successive trials which must necessarily be followed by successive reversals." In each of the more recent cases of *Delta Bag Co. v. Kearns*, 253 Ill. 365; *Dixon v. Smith-Wallace Shoe Co.*, 283 Ill. 234; and *Miles v. International Hotel Co.*, 289 Ill. 320, the Appellate Court reversed the judgment of the trial court without remanding and without a recital of facts. [211 Ill. App. 323.] But it appearing from the opinion of the Appellate Court that its reversal was predicated on the result, wholly or in part, of a finding of facts different from the finding of the trial court, the Supreme Court remanded the cause to the Appellate Court with directions to the effect that if a reversal by that court should again be predicated on such ground, it should enter a final judgment properly reciting the facts in accordance with section 120 of the Practice Act (J. & A. ¶ 8657).

In the case at bar, the reversal being predicated on a finding of fact different from the finding of the trial court which would preclude a recovery, we conceive it to be our duty to end the litigation by entering a final judgment reciting the fact as found.

*Reversed with a finding of fact.*

MR. PRESIDING JUSTICE MATCHETT: If it is to be understood by the foregoing opinion that it is our duty not to remand in any case where we conclude that the verdict is against the manifest weight of the evidence, then I cannot assent to the proposition.

Finding of fact.   We find that appellant, Chicago City Railway Company, was not guilty of the negligence charged in the declaration or any count thereof.