**William Davidson, Appellant, v. Wisconsin Chair Company, Appellee. Aetna Plywood and Veneer, Cross-Appellee.**

**Gen. No. 44,023.**

Opinion filed February 16, 1948. Rehearing denied March 19, 1948. Released for publication March 19, 1948.

JOSEPH D. RYAN and LOUIS G. DAVIDSON, both of Chicago for appellant.

WILLIAM S. KLEINMAN, of Chicago, for appellee; KIXMILLER, BAAR & MORRIS, of Chicago, for cross-appellee; Stanton Schuman, of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

We granted a rehearing, and plaintiff has filed his answer. The appeal is by plaintiff from a judgment

for $1,000, entered in his favor in this action for an unpaid balance of $2,517.80, with interest, for goods sold and delivered. Defendant cross-appeals from an order dismissing his counterclaim against additional parties brought into the action and hereafter referred to as counter-defendants. The case was tried before the court without a jury.

Plaintiff and defendant were furniture manufacturers. Defendant through a subsidiary dealt in school furniture and equipment. The transactions involved herein were the first dealings between them. June 28, 1943, defendant placed with plaintiff a written order for ''1,497 No. 127 unit tables—as per sample'' and an order for finishing 703 table tops purchased from the counter-defendants. The 1,497 tables were sold by defendant to the Michigan School Service, Inc., which in turn sold them to various schools in the State of Michigan where they were installed and used. Plaintiff's claim is for the unpaid balance of the contract price for these tables.

Defendant's answer alleges that when the order was given ''It was then and there likewise understood and agreed between the parties that said tables, when completed, must in all respects conform to the said sample submitted to plaintiff and must be accepted and approved by the said Michigan School Service, Inc. and the school authorities to whom said tables were to be shipped; that on December 24, 1943, defendant's representative inspected the tables then ready for shipment and refused to approve them because not made according to the sample and because of certain enumerated defects, and advised the plaintiff that the payment for the tables was contingent on their acceptance by Michigan School Service, and by the respective schools; that plaintiff agreed to said conditions to avoid a rejection of the tables and cancellation of the order; that it was further agreed that plaintiff would repair the tables at his own expense or be liable

for the necessary cost thereof if the schools refused to accept them;'' that the tables were not accepted by the schools and, plaintiff refusing to repair them, they were repaired at a cost of $1,436.53. These allegations were denied by plaintiff.

Defendant's evidence shows that this order was placed and all transactions relating thereto were handled by Severson, the sales manager of the defendant and its school equipment subsidiary. He had been with them about 20 years. He testified that in March 1943, he left with plaintiff his company's catalogue, telling plaintiff they would want about 1500 tables with tops made from five-quarter stock similar to the table designated in the catalogue as No. 127; that subsequently he delivered to plaintiff a No. 127 table; that he did not order tables to be made up exactly the same as the table submitted; that the changes from that table were, no inkwells were wanted, the tops were to be made from five-quarter stock instead of four-quarter stock, to be perfectly plain and the front leveled off in a certain way and the legs rounded, and that the top would be birch; that plaintiff made up the table (defendant's exhibit 5) of birch and some maple and said he would have birch for the tops and other hard wood for other parts of the table. From this testimony, supported in the main by plaintiff, it is apparent that it was not the intent of the parties that the tables should be ''No. 127 unit tables—as per sample,'' as specified in the order and alleged in defendant's answer, and the transaction was not a sale by sample.

Severson says that he first saw the completed tables December 24, 1943, when he examined about 20 tables and found all kinds of defects such as uneven and warped legs, warped tops, loose joints, screws missing, big knots in the legs and tops, the legs and tops were very rough and needed sanding, the bottoms, side and front rolls were improperly machined, there were loose jointed stretchers and a good deal of the wood

looked like soft wood, such as willow or soft maple; some tables had beech in them; that the tables were not in accordance with the sample received from the plaintiff; that he then told plaintiff he could not accept the tables in the conditions they were in; that he and plaintiff went to the shipping room and picked out a number of tables and all had the defects heretofore mentioned; that they found the same condition in the tables downstairs; that plaintiff ordered men to replace the missing screws, and when Severson said he could not accept tables of that type plaintiff said, ''Let's deliver this load here, and I will make good. I will take care of anything that is wrong with the tables if you get any complaints after the tables are delivered''; that Severson returned to his office and on December 27 wrote plaintiff a letter as follows:

''Confirming our verbal conversation last Friday we can do nothing but reject the sanding of the small table tops that you showed the writer.

It is doubtful even with numerous coats and finish sanding an acceptable job can be obtained on this lot of tops. Second, the quality and workmanship all the way through on the small tables is not in accordance with the samples originally submitted, but as the writer stated to you, if the customer accepts the tables in the condition they are, it is, of course, agreeable with us, but these tables as I advised you are being delivered entirely on your own responsibility.

As advised you we will do everything we can to get acceptance of what you deliver, but if there is any difficulty the responsibility will be yours.

I am sorry that the quality is so far below the samples submitted and below what we expected to receive on this order.''

Plaintiff denies receiving this letter. He also denies having made the arrangement for curing defects

claimed by defendant. He testified that when the first shipment was ready for delivery Severson said that screws were missing in some of the tables and that he, plaintiff, told the cabinet maker to put in screws where missing and to tighten the screws; that nothing was said about the finish or the kind of wood that was used or about the sides of the tables, and nothing was said as to what would be done if the tables were found not to be right after they were shipped. In his letter dated February 18, 1944, to defendant plaintiff says that he explained to Thompson, the agent of the Michigan School Service, that "the first lots that went out might be open to criticism, but this definitely could not apply to the balance of the order. I also explained to him the wood in the tops of the table was maple and the balance was willow and gum, and we could verify this with our bills." In a later letter, March 25, 1944, to defendant, plaintiff said: "With reference to the tables which we made for you and which we understand were delivered into various schools in Michigan. This letter is to advise that we will repair those tables which have defective wood or workmanship and place them in good condition. This also applies to any tables on which the finish must be fixed." No repairs were made or refinishing done by plaintiff.

Defendant introduced evidence showing that certain work was done by or at the direction of the Michigan School Service and sought to prove the value of this work by a statement prepared and rendered to defendant by the Michigan School Service after the litigation was commenced, and the testimony of Thompson, vice-president and general manager of the Michigan School Service, who was present at some but not all of the schools for an hour or two when some of the work was being done. The trial court found the issues for the plaintiff and assessed his damages at $1,000.

■■ There is nothing in the record showing specifically how the court arrived at this amount. Excluding plaintiff's claim for interest, the amount awarded

is substantially (within $82 of) plaintiff's full claim less the amount $1,436.53 claimed by defendant as the cost of work done in making the tables conform to defendant's theory of the contract. If the alleged damages—the cost of the repairs—were properly proved this judgment could be sustained on either of two theories: First, that the court accepted defendant's version of the condition of the tables at the time of delivery and plaintiff's promise to make good any defects upon complaint of the schools or the purchaser from defendant. There is evidence in the record supporting defendant's claim as to the defective condition of the tables when tendered to the defendant and its claim of plaintiff's agreement to cure the defects complained of by the schools and defendant's purchaser. Some of this evidence is denied by plaintiff. Second: In the absence of the agreement contended for by defendant, the latter must be held to have accepted the tables. On the trial defendant's counsel insisted that there was no question of the receipt of the tables by defendant or its customers, and at one time says, "We have accepted them." It is conceded that the schools for which they were intended installed and used them for six months or more until the repairs were made as claimed by defendant. Furthermore, defendant paid approximately two-thirds of the purchase price of the tables. Ordinarily such conduct constitutes acceptance. Ill. Rev. Stat. 1945, ch. 121½, par. 48 [Jones Ill. Stats. Ann. 121.52]; *Fred W. Wolf Co. v. Monarch Refrigerating Co.*, 252 Ill. 491, and *American Theatre Co. v. Siegel, Cooper & Co.*, 221 Ill. 145, 147. Acceptance of the tables did not bar defendant's claim for the allowance of expense of repair. Ill. Rev. Stat. 1945, ch. 121½, pars. 49 and 69, subpar. (1) (a) [Jones Ill. Stats. Ann. 121.53, 121.73, subpar. (1) (a)]; *Krone Die Casting Co. v. Do-Ray Lamp Co., Inc.*, 297 Ill. App. 602. The correctness of the judgment, therefore, depends upon whether defendant offered competent proof

of the alleged repairs to the tables. After plaintiff's action had been commenced the Michigan School Service at the request of defendant submitted to it an itemized statement of the expense of repairing, reconditioning and refinishing the tables, with a letter stating: "The reconditioning work involved on this job included such work as gluing up loose glue joints, leveling table legs, reinforcing many stretcher joints with wire nails, replacing screws in the book box bottom, and refinishing all 1497 of these unit table desks." The itemized statement included 723 hours of labor—$858.60; room and board expense of the man doing the job—$163.26; mileage on the car driven on the job—$128.80; varnish and supplies—$112.98; money paid to two boards of education for help in the work—$156.99; and telephone calls—$15.90. No original entries supporting these items were introduced in evidence. The workmen on the job were not called. Thompson, representing the Michigan Chair Service, testified that he was present at some of the schools for an hour or two when some of the work was being done and that from his experience in the school furniture and equipment business $1,436.53 was a fair and reasonable charge for the work done. Plaintiff objected to the introduction of the letter and itemized statement in evidence and also to the testimony of Thompson as to the reasonableness of the amount charged. The amount of the specific items of expense rests entirely upon statements of persons not called as witnesses, or reports, checks or receipts not identified or offered in evidence. This evidence was clearly incompetent to prove the alleged expenses. *Lindsey v. Rosen,* 255 Ill. App. 21, 24, 25; *House v. Beak,* 141 Ill. 290; *People v. Dime Savings Bank,* 350 Ill. 503.

Defendant's counterclaim is based on an alleged promise of counter-defendants to pay extra charges made by plaintiff for finishing table tops sold by counter-defendants to defendant. It appears that

defendant purchased 703 table tops from counter-defendants and delivered them to plaintiff for finishing at 84 cents per top; when several hundred of the tops had been delivered to plaintiff defendant's attention was called to the defective condition of the tops; Patteson, a representative of counter-defendant, who was deceased at the time of the trial, appeared at plaintiff's shop and after examining the table tops had a conversation with Severson, representing the defendant, after which plaintiff was told to do the necessary work in putting the table tops in a suitable condition. This work was done at an additional expense of $737.46. Defendant claims that counter-defendants promised to pay this amount and that plaintiff was present when the agreement was made. Plaintiff testified that Severson and Patteson held a private conversation; that Severson then told him to finish the tables as fast as he could. Plaintiff billed defendant for the extra work and was paid by it. Defendant then sent a debit memorandum for the amount to counter-defendants, which the latter refused to recognize. A letter written by Patteson admits some liability but refuses to pay the amount claimed. During the pendency of the litigation defendant paid counter-defendants the full amount in controversy. It now claims that this payment was made through an error or oversight in its office. Counter-defendants suggest that payment was made because defendant was seeking to make further purchases from counter-defendants. There is no evidence or charge that counter-defendants contributed in any way to the alleged mistake or in any manner misled or deceived defendant into making the payment. Under the circumstances there can be no recovery of the amount paid and the counterclaim was properly dismissed. *Illinois Glass Co. v. Chicago Telephone Co.*, 234 Ill. 535; *Western & Southern Life Ins. Co. v. Brueggeman*, 323 Ill. App. 173. The order on the counterclaim is affirmed.

 Since we conclude that there is substantial merit in the defense interposed but there is lacking competent evidence as to the damages, the court having heard and considered incompetent evidence over the objection of plaintiff, we are obliged to reverse the judgment of the circuit court and remand it with directions to hear competent proof as to the damages, and otherwise proceed in harmony with the views herein expressed. In *Rehr v. West,* 333 Ill. App. 160, we reached the same conclusion as to the lack of competent proof of damages and remanded the cause with similar directions.

*Reversed and remanded with directions.*

O'CONNOR, J., concurs.

NIEMEYER, P. J., dissents. The opinion on rehearing is substantially the same as the original opinion except for the remanding order. The case is now remanded "with directions to hear competent proof as to the damages." By the former opinion the cause was remanded "with directions to enter judgment for plaintiff for the full amount of his claim."

Defendant's request for a reopening of the case for the introduction of further evidence is limited to the simple statement in its petition for rehearing that "a more just determination of this appeal would have been an order of remandment to enable defendant to supply the proof of the cost of repairs as is now required by this Court." Nowhere in the record is there any statement or suggestion that further proof on the question of alleged damages or cost of repairs of the tables in question is available to defendant. On the trial defendant unreservedly took the position that it was not required to show that it had repaired the tables, and that it was not asking for damages. In one place attorney for defendant says, "With reference to the claim for the balance due on the 1497 tables, our position is we do not owe him (Davidson) any

more money, *whether or not we did the repairs.* . . . Until they comply with the provisions of their agreement they are entitled to no money.'' (Italics ours.) Shortly thereafter the following colloquy took place. ''The Court: I don't know. I think you have to go further than that, too. . . . Whether that would be a fair and reasonable charge for the work would be a question of evidence, and not a mere statement. . . . You are asking for damages. Mr. Kleinman: I am not. This is merely additional evidence that we were not obliged to pay them any sums of money because in the first place they didn't send us the merchandise we asked for.'' On the trial plaintiff strenuously objected to the evidence which defendant was offering to show the cost of repairs, and specifically pointed out the reasons for the objection, which were the same as those advanced on appeal. Defendant at no time suggested the other or additional evidence to prove the cost of repairs was available or asked for an opportunity to produce such evidence. As the trial was before the court without a jury, no practical obstacle prevented a continuance of the cause had such request been made. We are therefore confronted with a situation where a defendant tried the case below upon a certain theory and was permitted by the trial court to introduce all the evidence which the defendant deemed necessary or advisable. Neither reason nor authority supports remandment of the cause at the request of the defendant for trial on a different theory or for the purpose of introducing evidence which may or may not be available.

The general rule is stated in *Sheddon v. Patrick,* L. R. 1 Sc. 470, 545, quoted in Nichols Illinois Civil Practice, vol. 6, sec. 6355, p. 330, in commenting upon sec. 92 (1) (d) of the Civil Practice Act [Ill. Rev. Stat. 1945, ch. 110, par. 216, subpar. (1) (d); Jones Ill. Stats. Ann. 104.092, subpar. (1) (d)] as follows:

"It is an invariable rule in all the courts, that if evidence which either was in the possession of parties at the time of the trial, or by proper diligence might have been obtained, is either not produced, or has not been procured, and the case is decided adversely to the side to which the evidence was available, no opportunity for producing the evidence ought to be given by the granting of a new trial."

In *Segal v. Chicago City Ry. Co.*, 216 Ill. App. 11, another division of this court reversed the judgment of the trial court on the ground of the insufficiency of the evidence, and in answer to appellee's suggestion that " . . . it is probable that upon another trial additional witnesses could be procured" (a suggestion not made by appellee here), the court said (p. 17):

"Even if the record supported the inference—and it does not—that additional evidence favorable to plaintiff might be procured, yet we must assume, in the absence of any adverse ruling precluding him from producing it, that he either presented the best evidence he had or at least such as he was willing to go to trial on. To remand on the mere possibility of procuring additional evidence would be contrary to the policy of the law. To warrant a new trial on such ground, even a trial court would require a showing of due diligence to procure all evidence obtainable at the time of the trial. (*Graham v. Hagmann*, 270 Ill. 252.)"

This case was later reversed (325 Ill. 43) on constitutional grounds, but nothing was said by the Supreme Court impairing the effect of the matter quoted. In *Street v. Chicago Wharfing & Storage Co.*, 157 Ill. 605, where complaint was made that the Appellate Court erred in reversing a chancery cause with directions to enter a decree without giving appellant an opportunity to introduce testimony and be heard in the circuit court, the Supreme Court said (p. 615):

"They had opportunity to produce such witnesses and such competent testimony as they desired. Not having availed themselves of this opportunity, it must be presumed that they either acquiesced in the statements made by the witnesses introduced by appellee as true, or concluded that they could not successfully and truthfully contradict them, and therefore were willing to submit the cause for decision, relying upon the claim of the incompetency and insufficiency of the evidence of appellee to establish its cause. As they made their bed they must lie in it. Courts will not hear causes by piecemeal. Appellants have had their day in court. If the defense they made was unsuccessful, it was their misfortune; but the fact they made a bad and insufficient defense does not give them the right to have the cause remanded for the purpose of affording them an opportunity to hunt up a better defense. Sound public policy demands that there shall be an end to litigation."

The reason assigned by the Supreme Court is equally applicable to cases at law tried before the court without a jury, and the same rule of public policy demanding an end to litigation should prevail. To the same effect is *Union Nat. Bank v. Hines,* 187 Ill. 109, 114.

The opinion of the court bases its right to remand the cause for further evidence on the question of the alleged repairs on its action in *Rehr v. West,* 333 Ill. App. 160, in which the writer of this dissent concurred. In that case the plaintiff recovered the full contract price for a defective cement floor laid by the defendant. Neither on the trial nor on appeal to this court was the competency of the evidence or the amount of the judgment questioned. Although the propriety of our action might be questioned, this court on its own volition imposed on the parties a rule of damages not asked by them and reversed the judgment. Simple justice required that plaintiff be permitted to meet the

new situation created solely by this court's action. The present case does not present a similar situation. Defendant, represented by able and experienced counsel, tried the case on a theory different from that presented on appeal and upon evidence the incompetency of which was plainly and strenuously urged in the trial court. The court's error in receiving evidence offered by defendant was induced by defendant. It is in no position to request another trial or to complain of the denial of an opportunity to present evidence the existence of which it does not even suggest. In the comparatively recent case of *Bart v. Pine Grove, Inc.*, 326 Ill. App. 426, where the question of remanding for the purpose of hearing further evidence was directly presented, the plaintiff having failed to offer sufficient proof, this court said:

"But counsel for plaintiff in his brief says that if this court feels that the trial court 'did not consider enough evidence in the matter before reaching its decision, then the case should be remanded with instructions that further evidence be heard.' We think this ought not be done because, as stated by the Supreme court of the United States in *Stoll v. Gottlieb*, 305 U. S. 165: 'It is just as important that there should be a place to end as that there should be a place to begin litigation.' "