Desbergers, Limited, Plaintiff-Appellee, v. Lincoln Laboratories, Inc., Defendant-Appellant.

**Gen. No. 9,771.**

Opinion filed May 31, 1951. Rehearing denied September 4, 1951. Released for publication September 4, 1951.

WEILEPP & WILSON, of Decatur, for appellant; JOHN W. DYAR, of Decatur, of counsel.

LeForgee, Samuels & Miller, of Decatur, for appellee; Carl R. Miller, and Jerald E. Jackson, both of Decatur, of counsel.

Mr. Justice Dady delivered the opinion of the court.

Plaintiff, Desbergers, Limited, a Canadian corporation, obtained a judgment in its favor on the pleadings and against the defendant-appellant, Lincoln Laboratories, Incorporated, a corporation for $6,602.40.

The unverified complaint alleged and the unverified answer admitted that about August 30, 1948, defendant gave plaintiff a written order for one million oestrilin tablets at the price of $6 per thousand F.O.B. Montreal, Canada; that by such order defendant agreed to pay two-thirds of the purchase price on delivery and the balance when confirmatory assays were completed; that one million of such tablets were delivered to and accepted by defendant on or before October 15, 1948; that defendant failed to pay two-thirds of the purchase price when the tablets were delivered; that the potency recited on the labels on the tablets was "Estrogenic substances containing 6500 International Units per tablet"; that confirmatory assays "have been completed" in Desbergers' laboratories and in the Laboratory of Industrial Hygiene, Inc., showing that the tablets sold defendant were of labeled potency; that on February 28th, defendant wrote plaintiff that it wished to return the balance of the tablets on hand to plaintiff; that on March 15, 1949, plaintiff wrote defendant that it was willing to recall the shipment of tablets that were still in a bonded warehouse, and that on July 8, 1949, plaintiff wrote defendant that it learned that the tablets in question were not in a bonded warehouse but had been delivered to defendant, and that plaintiff consented to defendant shipping back to plaintiff any unopened cases of tablets if the same were in the same

condition as received by defendant, fixing July 15, 1949, as the date fixed for the return thereof or for an arrangement concerning the return thereof, but that defendant had not returned any tablets to plaintiff. The complaint then alleged and the answer admitted that defendant had not paid for the tablets or any part thereof although duly demanded.

The answer of the defendant then alleged that the tablets shipped by plaintiff to defendant were assayed by defendant's own laboratories and by Molnar Laboratories of New York City, and by such assays it was determined such tablets were not to exceed more than 3300 International Units per tablet. Such answer then stated that plaintiff had committed a breach of warranty by shipping tablets that did not exceed more than one-half of the labeled potency of 6500 International Units per tablet, and for that reason defendant, pursuant to Sec. 69, Chap. 121 1/2 Ill. Rev. Stat. 1949 [Jones Ill. Stats. Ann. 121.73], claimed a setoff by virtue of plaintiff's breach of warranty with respect to the inferior potency of the tablets, and that defendant claimed a setoff in the sum of $3,500, or in an amount to be determined by trial of the facts, and denied that plaintiff was entitled to a judgment for $6,602.40.

The order which ordered the tablets stated: "Tablets must be subjected to assay for labeled potency before final acceptance. 2/3 payment will be made on delivery, balance will be forwarded on completion confirmatory assays—chemical and biological."

Plaintiff filed its motion for summary judgment, and in support thereof filed the affidavit of its president, which affidavit, so far as is now material, after swearing that the facts alleged in the complaint were true, stated that by reason of such facts, after allowing all just credits, there was due plaintiff from defendant $6,602.40.

In opposition to the motion defendant filed an affidavit of Wallace A. Buck, president of the defendant, the affidavit of James H. Cannon, a chemist, and the affidavit of N. M. Molnar, a chemist and director of Molnar Laboratories.

So far as we consider now material, and disregarding mere conclusions, the affidavit of Buck, stated that the tablets in question were not usable by the defendant for the purpose for which they were purchased, that such tablets after being received by defendant were packed and labeled by defendant "Linestoral," that no processing of the tablets other than such packing and relabeling was done by defendant, that defendant then caused such product to be introduced on the market under the label of defendant, that thereafter defendant received complaints as to the potency of Linestoral, and as a result an assay was performed, and that affiant directed Molnar Laboratories to make a biological assay to determine the potency of Linestoral, *"which in fact is the identical material found in the tablets sold to defendant by plaintiff, known as oestrilin."* (Our italics.)

The affidavit of Cannon stated that from 1945 to 1949 he was director of laboratories and chief chemist for the defendant, that on August 29, 1948, he and Buck were in the office of plaintiff in Canada and at that time Desbergers represented they would sell defendant oestrilin tablets containing 6500 International Units per tablet, that the affiant personally supervised receipt of the tablets from plaintiff, and that said oestrilin was repacked and relabeled by defendant by the trade name of "Linestoral," and the only processing done on said tablets was to unpack them and repack them and relabel them under the trade name of "Linestoral," and that no chemical changes were induced by defendant, that he directed an assay to be made by Molnar Laboratories of New York, and that the material assay by

187

Molnar Laboratories was for the same tablets as those so purchased by defendant from plaintiff.

The affidavit of Molnar stated that he was the director of Molnar Laboratories, that on December 15, 1948, he prepared and signed a report to defendant, which was made at the request of defendant, that said report was made as a result of a biological assay made under his personal direction and supervision, and that as a result of the biological assay he found the potency of the tablets was as follows, to wit: Estrogenic substance contained 3350 International Units per tablet.

The affidavit of Buck stated that the matters contained in his affidavit were within his personal knowledge and that if sworn as a witness he would competently testify to the matters set out in such affidavit.

The affidavit of Molnar stated that if called as a witness he would testify to the contents of such affidavit or by deposition.

On motion of plaintiff the court struck the three affidavits of defendant and entered the judgment in question.

Sec. 69, Ch. 121 1/2 of the Illinois Revised Statutes of 1949 provides that where there is a breach of warranty by the seller, the buyer may, at his election, accept or keep the goods and set up against the seller, a breach of warranty by way of recoupment in diminution or extinction of the price. (See *Davidson v. Wisconsin Chair Co.*, 333 Ill. App. 426.)

After a careful study of defendant's three supporting affidavits it is our opinion that such affidavits raised a material issue of fact and that therefore the court erred in not denying the motion for summary judgment. (See *Roberts v. Sauerman Bros.*, 300 Ill. App. 213; *Fisher v. Rosenberg*, 299 Ill. App. 617.)

The judgment appealed from is reversed and the cause is remanded with directions to the trial court to

enter an order denying the motion to strike defendant's affidavits and for summary judgment, and for further proceedings consistent with this opinion.

*Reversed and remanded with directions.*